UNITED STATES of America, Appellee,

v.

**George Lankford POWELL, Jr.; Geotina Corp.; G & J Music, Inc.; Harpo's Music, Inc., Appellants.**

No. 82–1967.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1983.

Decided March 4, 1983.

Rehearing and Rehearing En Banc Denied April 4, 1983.

Paul C. Engh, Thomson, Hawkins & Engh, Saint Paul, Minn., for appellants.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

BRIGHT, Circuit Judge.

Appellants George Lankford Powell, Jr., and his three corporations [1] appeal convictions of conspiracy to commit criminal copyright infringement, in violation of 18 U.S.C. § 371, and of two counts of copyright infringement under 17 U.S.C. § 506(a). Appellants contend that the indictment charging them with selling unlawfully manufactured "bootleg" records should have been dismissed because it did not sufficiently set forth the essential elements of copyright infringement. We affirm the judgment of the district court.[2]

I.  *Background.*

Appellants operate five retail phonorecord stores in the Minneapolis/St. Paul metropolitan area. Beginning in approximately January 1981, Powell and his employees purchased records by catalogue from a New York retailing firm that distributes primarily "bootleg records." [3] Bootleg records are recordings made without the authorization of the copyright holder and in contravention of the copyright holder's exclusive right to reproduce copies of a protected work. At monthly meetings during 1981, Powell instructed his store managers regarding the purchase, markup, and display of the bootleg records. At a meeting on July 21, 1981, Powell instructed his managers to "be subtle" in marketing the bootleg records in stock and to cease buying them.

On August 13, 1981, Ryan Cameron, the manager of the appellants' downtown Minneapolis store, sold a copy of Bruce Springstein's "Great White Boss, Bottom Line 8/15/75," a bootleg record, to undercover

---

James M. Rosenbaum, U.S. Atty. by Janice M. Symchych, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

1. Powell owns controlling interest in Geotina Corporation, Harpo's Music, Inc., and G & J Music, Inc.

2. Honorable Edward J. Devitt, United States Senior District Judge for the District of Minnesota.

3. The district court adopted the facts as stipulated by all of the parties pursuant to a plea bargain agreement.

FBI agents. On the same day, Mark Chukel, the manager of one of appellants' suburban stores, sold a copy of "Blondie: Little Doll," another bootleg record, to undercover agents. Pursuant to search warrants, FBI agents searched the five stores and seized approximately 500 bootleg records.[4]

A subsequent indictment charged that Powell and his three corporations had knowingly conspired to infringe copyrights, in violation of 18 U.S.C. § 371, and had knowingly and willfully infringed copyrights for purposes of commercial advantage and private gain, in violation of 17 U.S.C. § 506(a). The trial court denied the appellants' motions to dismiss the indictment and to suppress the seized evidence. Following a bench trial, the trial court convicted the appellants and assessed fines totalling $15,000. Reasserting their challenge to the indictment, Powell and his three corporations appealed.

## II. *Discussion.*

Section 506(a) of the Copyright Act creates criminal liability for any person who infringes a copyright "willfully and for purposes of commercial advantage." 17 U.S.C. § 506(a) app. (1976).[5] A copyright is infringed whenever a person violates any of the exclusive rights belonging to the copyright owners. *See* 17 U.S.C. § 501(a) app. (1976). Two of the exclusive rights held by copyright holders are the rights to reproduce the copyrighted work and to distribute copies of the copyrighted work. *See* 17 U.S.C. § 106 app. (1976).[6]

■ The first sale doctrine, contained in 17 U.S.C. § 27, states in part:

[B]ut nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been *lawfully obtained.* 17 U.S.C. § 27 (1976) (emphasis added).

Under the first sale doctrine, a copyright holder who conveys title to a particular copy of a copyrighted work, relinquishes the exclusive right to vend that particular copy. *United States v. Wise,* 550 F.2d 1180, 1187 (9th Cir.), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977). Although the holder's other rights remain intact (reprinting, copying, etc.), the vendee holds the right to distribute the transferred copy in whatever manner he chooses. *Id.* The Ninth Circuit has applied the first sale doctrine in cases where the copyright holder released legitimately produced works for commercial showing. These cases focused on whether the type of release in fact constituted a first sale terminating the copyright holders' distribution rights. *See United States v. Atherton,* 561 F.2d 747 (9th Cir.1977); *United States v. Drebin,* 557 F.2d 1316 (9th Cir.1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978).

■ Appellants contend that as an essential element of criminal copyright infringement, the indictment must specifically al-

---

4. Four of Powell's corporate employees, including managers Cameron and Chukel, pled guilty to a single count of criminal copyright infringement. Their convictions are not at issue in this appeal.

5. 17 U.S.C. § 506(a) provides:

(a) Criminal infringement

Any person who infringes a copyright willfully and for purposes of commercial advantage or private financial gain shall be fined not more than $10,000 or imprisoned for not more than one year, or both: *Provided, however,* That any person who infringes willfully and for purposes of commercial advantage or private financial gain the copyright in a sound recording afforded by subsections (1), (2), or (3) of section 106 or the copyright in a motion picture afforded by subsections (1),

(3), or (4) of section 106 shall be fined not more than $25,000 or imprisoned for not more than one year, or both, for the first such offense and shall be fined not more than $50,000 or imprisoned for not more than two years, or both, for any subsequent offense.

6. 17 U.S.C. § 106 provides in part:

[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work to copies in phonorecords;

\* \* \* \*

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]

lege that the defendants knew a first sale of the copyrighted material had not been made. We reject this contention. We agree with the reasoning of the district court that, "[b]ecause there can be no lawful distribution of a bootleg record, the copyright holder, cannot, by definition, part with legal title through a first sale."

Courts have applied the first sale doctrine only where the possibility existed that the person possessing the copyrighted work obtained it lawfully in the first place. None of the cases cited by appellants involve bootleg records. Nor do these cases discuss the sufficiency of the indictment.

▮ An indictment is generally sufficient if it sets forth the words of the statute itself, as long as those words fairly inform the defendant of the elements necessary to constitute the offense charged. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882); *United States v. Camp,* 541 F.2d 737, 739 (8th Cir.1976). The indictment in question basically tracks the words of the statute, stating that the appellants knowingly infringed valid copyrights for purposes of commercial advantage and private financial gain. It sets forth specifically the alleged wrongful acts with which appellants are charged.

Accordingly, we hold that the indictment sufficiently sets forth the elements of criminal copyright infringement, and affirm the judgment of the district court.