**COLUMBIA PICTURES INDUSTRIES, INC., et al., Plaintiffs,**

v.

**AVECO, INC., et al., Defendants.**

**Civ. No. 84–0774.**

United States District Court, M.D. Pennsylvania.

June 28, 1985.

---

Robert L. Byer, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., C. Kent Price, Lee C. Swartz, Hepford, Swartz, Menaker & Morgan, Harrisburg, Pa., Harvey Shapiro, Burton H. Hanft, Sargoy, Stein & Hanft, New York City, for plaintiffs.

Edward W. Goebel, Jr., MacDonald, Illig, Jones & Britton, Erie, Pa., Franklin A. Miles, Jr., David E. Lehman, McNees, Wallace & Nurick, Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

This is a copyright infringement action. The Plaintiffs are the major motion picture producers in the United States. The Defendants operate a business known as "Nickelodeon Video Showcase" in Lock Haven and State College, Pennsylvania (hereinafter collectively referred to as "the Nickelodeon"). Presently pending before the Court are the parties' cross-motions for summary judgment.

At the Nickelodeon, the Defendants rent video cassette recordings of movies on which the Plaintiffs own copyrights. The Defendants also rent rooms of various sizes that can accommodate between 2 and 25 people which are equipped with couches, television sets, and video cassette players. The Nickelodeon does not hold a public performance license of the type required to be held by a movie theatre. Nickelodeon customers can take advantage of the Nickelodeon's services in several ways. They can rent a cassette, take the cassette home, and play it on their own video cassette player. They can rent a cassette somewhere other than the Nickelodeon, rent a viewing room at the Nickelodeon and view the cassette there. Customers also can rent both a video cassette and a room at the Nickelodeon. Finally, customers can rent a room at the Nickelodeon and play a video cassette owned by the customer.

The Plaintiffs contend that some of the services provided by the Nickelodeon constitute copyright infringement. In particular, the Plaintiffs object to the Nickelodeon's renting of video cassettes coupled with renting of viewing rooms which, in the Plaintiffs' view, is legally indistinguishable from the operation of a traditional movie theatre. The Plaintiffs rely heavily on the recent decision of the Court of Appeals for the Third Circuit in *Columbia Pictures, et al. v. Redd Horne, Inc., et al.*, 749 F.2d 154 (3d Cir.1984) (hereinafter *"Redd Horne"*) to support their argument that the Defendants' activities constitute copyright infringement.

Relevant Statutory Provisions.

The Plaintiffs contend that the Defendants have infringed copyrights held by the Plaintiffs by exercising some of the rights granted exclusively to the Plaintiffs under the copyright statute. 17 U.S.C. § 106(4) provides in part that:

... the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

. . . .

(4) In the case of ... motion pictures and other audio visual works, to perform the copyrighted work publicly....

The parties agree that either the Defendants or their customers "perform" the copyrighted works involved in this case. *See* 17 U.S.C. § 101. The Plaintiffs initially contended that the Defendants performed the copyrighted works but apparently now accept the Defendants' argument that it is the Nickelodeon's customers who perform the copyrighted works. The Plaintiffs contend, however, that this distinction is immaterial.

The major dispute between the parties is whether the videocassettes are performed "publicly." The copyright statute defines this phrase:

> To perform ... a work "publicly" means
> (1) To perform ... it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of family and its social acquaintances is gathered; or
> (2) To transmit or otherwise communicate a performance ... of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance ... receive it in the same place or in separate places and at the same time or at different times.

17 U.S.C. § 101

### The *Redd Horne* Decision.

The Plaintiffs contend that this case is controlled by the decision of the Court of Appeals for the Third Circuit in *Columbia Pictures Industries, Inc., et al. v. Redd Horne, et al.,* 749 F.2d 154 (3d Cir.1984). *Redd Horne* involved a claim that the Defendants, individuals and entities involved in the operation of Maxwell's Video Showcase Ltd. ("Maxwell's"), infringed the Plaintiffs' copyrights by publicly performing the works without the Plaintiffs' permission. Maxwell's was similar to the Nickelodeon but with the following exceptions. Unlike the Nickelodeon, Maxwell's did not purport to be involved in two different enterprises, namely, the renting of video cassettes and the renting of viewing rooms. Rather, Maxwell's charged customers a fee for the rental of a viewing room in which a video cassette movie would be shown. Whereas Nickelodeon customers themselves play the video cassette, Maxwell's employees played the video cassette for Maxwell's customers. Finally, at the Nickelodeon each viewing room is equipped with its own video cassette player whereas at Maxwell's the players were located in the central area in the store and outside of the "private" viewing rooms.

The Defendants in *Redd Horne* contended that they did not publicly perform the copyrighted movies because the movies were performed in the "private" viewing rooms at Maxwells but the District Court and the Court of Appeals disagreed. The Court of Appeals concluded that Maxwell's was a "place open to the public" under 17 U.S.C. § 101:

> ... we agree with the District Court's conclusion that Maxwell's was open to the public. On the composition of the audience, the district court noted that "the showcasing operation is not distinguishable in any significant manner from the exhibition of films at a conventional movie theatre." [*Columbia Pictures Indus. v. Redd Horne, Inc.*] 568 F.Supp. [494] at 500 [W.D.Pa.1983]. Any member of the public can view a motion picture by paying the appropriate fee. The services provided by Maxwell's are essentially the same as a movie theatre, with the additional feature of privacy. The relevant "place" within the meaning of § 101 is each of Maxwell's two stores, not each individual booth within each store. Simply because the cassettes can be viewed in private does not mitigate the essential fact that Maxwell's is unquestionably open to the public.

*Redd Horne,* 749 F.2d at 159. The Court also stated that "Although Maxwell's has only one copy of each film, it shows each copy repeatedly to different members of the public. This constitutes a public performance." *Id.* Finally, the Court of Appeals held that Maxwell's publicly performed the cassettes because, in addition to performing them at a place open to the public, they transmitted them within the

meaning of sub-section (2) of the definition of "to perform a work publicly" in 17 U.S.C. § 101.

The Court of Appeals also rejected the argument that Maxwell's activities were protected by the first sale doctrine of 17 U.S.C. § 109(a). "The first sale doctrine prevents the copyright owner from controlling the future transfer of a particular copy once its material ownership has been transferred." *Redd Horne*, 749 F.2d at 159. (citations omitted). Although the first sale doctrine prevents the Plaintiffs from controlling future transfer of copies of their video cassettes after they have sold them to a retail operation such as Maxwell's, sale of the cassette does not result in a waiver of all of the exclusive rights of a copyright holder under 17 U.S.C. § 106 and those exclusive rights include the right to perform the copyrighted work publicly. *Id.* at 160. In rejecting the *Redd Horne* Defendants' argument that their activities were protected by the first sale doctrine, the Court of Appeals stated that the defendants' activities could not properly be characterized as an "in-store rental" as the Court would have to do in order to accept the defendants' argument. The Court reviewed the facts and concluded that the defendants did not engage in a true rental of the videocassettes and their activities were therefore not protected by the first sale doctrine:

> Maxwell's never disposed of the tapes in its showcasing operations, nor did the tapes ever leave the store. At all times, Maxwell's maintained physical dominion and control over the tapes. Its employees actually played the cassettes on its machines. The charges or fees received for viewing the cassettes at Maxwell's facilities are analytically indistinguishable from admission fees paid by patrons to gain admission to any public theatre. Plainly, in their showcasing operation, the appellants do not sell, rent, or otherwise dispose of the videocassette. On the facts presented, Maxwell's "showcasing" operation is a public performance

which, as a matter of law, constitutes a copyright infringement. *Id.* at 160.

#### The Nickelodeon.

The Defendants had contended that the Plaintiffs had failed to establish that they are the holders of registered copyrights in the works which are the subject of this case. Such registration is a prerequisite to an action for copyright infringement. 17 U.S.C. § 411(a). The Defendants stated in their last brief filed in this action, on May 24, 1985, that "Plaintiffs should be required to submit authenticated copies of the official copyright registration certificates issued by the Registrar of Copyrights for the motion pictures in question." Defendants' reply brief at 4. In this Court's order of June 6, 1985 which allowed the Plaintiffs to file the copies of the registration certificates, the Court granted the Defendants an opportunity to file a supplemental brief in opposition to the Plaintiffs' motion for summary judgment, "... said brief to be restricted to a discussion of the [documents to be filed by the Plaintiffs] and the legal effect thereon on the request for summary judgment." On June 7, 1985, the Plaintiffs submitted a 4-inch thick document consisting of copies of copyright certificates issued by the Registrar of Copyrights. Because of the large number of works involved, the Court has not attempted to determine whether the Plaintiffs have submitted registration certificates for every one of the works with respect to which the Plaintiffs claim infringement of their copyright. The Defendants have not filed anything to indicate that the Plaintiffs' submission is inadequate to establish registration of the copyrights in question under § 411(a). We therefore conclude that there is no genuine dispute as to this fact.

The Defendants contend that the facts of this case are distinguishable from the facts in *Redd Horne*. They note, among others, the following factual distinctions. (1) Maxwell's rented the viewing rooms only in connection with rental of the videocassettes and therefore, in effect, operated as a type of movie theatre whereas the Nickelodeon

rents the viewing rooms and rents cassettes independently. Rental of the rooms and rental of the cassettes is not necessarily related. (2) Maxwell's employees played the cassettes for Maxwell's customers; Nickelodeon customers must play the cassettes they rent themselves. (3) "At all times, Maxwell's maintained physical dominion and control over the tapes," *Redd Horne* at 160, but the Nickelodeon yields control of the tapes to the customer and therefore engages in a genuine "in-store rental." *See Id.* The Defendants argue that their activities are protected by the first sale doctrine because their activities are closer to rental of videocassettes to home users than to the display of a movie by a movie theatre. Rental of videocassettes to members of the public who play the cassette at home does not constitute copyright infringement and is not objected to by the Plaintiffs.

Also, in response to the Plaintiffs' original argument that the Defendants were publicly performing the Plaintiffs' copyrighted works in violation of the Plaintiffs' exclusive rights under the copyright act, the Defendants argued that their customers, not the Defendants themselves, were performing the copyrighted works. *See* 17 U.S.C. § 101. The Plaintiffs respond that the Defendants' operation of the Nickelodeon still constitutes infringement of the Plaintiffs' copyrights because § 106 of the Copyright Act gives the copyright holder the exclusive right not only to perform the work publicly but also the exclusive right to authorize public performance. Assuming that the copyrighted works are being performed publicly, the Plaintiffs argue that the Defendants are authorizing public performance of the copyrighted works. We agree. The question remains, however, whether the Plaintiffs' copyrighted works are being publicly performed.

The operation of the Nickelodeon is factually distinguishable from the operation of Maxwell's which was held to constitute copyright infringement in *Redd Horne.* Nevertheless, in our view, those factual differences do not dictate a legal result different from the result reached in *Redd*

*Horne.* *Redd Horne* clearly held that for purposes of the Copyright Act, Maxwell's viewing rooms and entire store were places "open to the public" and that performance of the cassettes at Maxwell's therefore constituted "public performances." The Court of Appeals reached this conclusion despite the fact that when a family or other small group viewed a movie at Maxwell's, the room in which they viewed the movie was closed to other members of the public. *Redd Horne,* 749 F.2d at 159. In this respect, we see no difference between the Nickelodeon and Maxwell's. The factual distinctions pointed to by the Defendants are therefore immaterial.

The Nickelodeon is open to the public just as Maxwell's was open to the public. The cassettes are performed at the Nickelodeon by Nickelodeon customers and the cassettes are therefore publicly performed. The Plaintiffs have not authorized these performances. By enabling its customers to perform the cassettes, the Defendants infringe the Plaintiffs' exclusive right under § 106 of the Copyright Act to authorize public performance of the movies and therefore infringe the Plaintiffs' copyrights.

■ We reject the Defendants' argument that their activities are protected by the first sale doctrine. The first sale doctrine gives the Defendants the right to rent the videocassettes they have purchased from the Plaintiffs. It does not, however, give them any of the other rights granted exclusively to the Plaintiffs under § 106 including the right to authorize public performances of the movies. As in *Redd Horne,* "... the Defendants' 'first sale' argument is merely another aspect of their argument that their activities are not public performances." *Redd Horne* at 160.

■ Although there is some superficial appeal to the Defendants' argument that operation of the Nickelodeon is legally indistinguishable from the concededly legal rental of cassettes to customers for home viewing, this argument has no merit. The Nickelodeon clearly offers a service quite

different from the service offered by a store that engages in rental of video cassettes alone. The Nickelodeon gives an individual who wishes to view a particular movie available on video cassette who does not own or have the ability to rent a video cassette player the opportunity to view the cassette at the Nickelodeon. But for the Defendants' rental of the Nickelodeon viewing rooms, individuals who rent video-cassettes would view them in a private place, *i.e.*, the individual's home, rather than in a place open to the public such as Maxwell's or the Nickelodeon. It is this factor that distinguishes the Defendants' activities from simple rental of videocassettes to home users under the Copyright Act. As pointed out by the Plaintiffs, this difference is of considerable importance to the copyright holders: "... A person's home is not rented out in two hour shifts to afford separate groups of persons the opportunity to see a variety of motion pictures. Nickelodeon's rooms are." Plaintiffs' reply brief at 7. The operation of the Nickelodeon greatly increases the number of people able to view videocassettes of the Plaintiffs' copyrighted works.

For the foregoing reasons, we agree with the Plaintiffs that the Defendants' operation of the Nickelodeon infringes the Plaintiffs' copyrights in their movies. 17 U.S.C. § 501(a). It therefore appears that the Plaintiffs are entitled to issuance of a permanent injunction restraining the Defendants from infringing the Plaintiffs' copyrights under 17 U.S.C. § 502. We will grant the Plaintiffs' motion for partial summary judgment, deny the Defendants' cross-motion for summary judgment and direct the parties to submit a proposed form of order consistent with this opinion. Determination of the damages, if any, for which the Defendants are liable has not been requested by the Plaintiffs at this point.

The Defendants also request oral argument. This case is not of sufficient complexity to warrant the expenditure of time involved in oral argument. We fully understand Defendants' contentions.

An appropriate order will be entered.

## ORDER

1. The Plaintiffs' motion for partial summary judgment is granted.

2. The Defendants' motion for summary judgment is denied.

3. The parties shall jointly submit a proposed form of order consistent with the accompanying opinion within 15 days of the date of this order if they can agree upon it.

4. In the event that the parties are unable to agree upon a proposed form of order, each party shall submit a proposed form of order within 20 days of this order.

5. The Defendants' request for oral argument is denied.