800 F.2d 59
 55 USLW 2202, 230 U.S.P.Q. 869, 1986
Copr.L.Dec. P 25,997,
13 Media L. Rep. 1841
 COLUMBIA PICTURES INDUSTRIES, INC., Embassy Pictures, MGM/UA
Entertainment Co., United Artists Corporation, Paramount
Pictures Corporation, Twentieth Century Fox Film
Corporation, Universal City Studios, Inc., Walt Disney
Productions, Inc., Buena Vista Distribution Co., Inc. and
Warner Bros., Inc.
v.
AVECO, INC., Individually and trading and doing business as
Nickelodeon Video Showcase and as American Video Exchange,
and Leonardos, John P., Individually and trading and doing
business as Nickelodeon Video Showcase and as American Video
Exchange.
Appeal of AVECO, INC., individually and trading and doing
business as Nickelodeon Video Showcase and as American Video
Exchange, and John P. Leonardos, also known as John P.
Leonard, individually and trading and doing business as
Nickelodeon Video Showcase and as American Video Exchange.
 No. 85-5608.
 United States Court of Appeals,
Third Circuit.
 Argued June 6, 1986.
Decided Sept. 4, 1986.
 
 Edward W. Goebel, Jr. (argued), Russell S. Warner, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellants.
 David Ladd (argued), David E. Leibowitz, Bruce G. Joseph, Wiley & Rein, Washington, D.C., Burton H. Hanft, Harvey Shapiro, Sargoy, Stein & Hanft, New York City, Lee C. Swartz, Hepford, Swartz, Menaker & Morgan, Harrisburg, Pa., for appellee.
 Before GIBBONS, BECKER, and STAPLETON, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge.
 
 
 1
 Plaintiffs, appellees in this action, are producers of motion pictures ("Producers") and bring this copyright infringement action against the defendant, Aveco, Inc. Producers claim that Aveco's business, which includes renting video cassettes of motion pictures in conjunction with rooms in which they may be viewed, violates their exclusive rights under the Copyright Act of 1976, 17 U.S.C. Sec. 101 et seq. The district court agreed and we affirm. Jurisdiction below was predicated on 28 U.S.C. Secs. 1331 and 1338(a).
 
 
 2
 After discovery, the parties filed cross motions for summary judgment. The district court found that Aveco had infringed on Producers' exclusive rights to publicly perform and authorize public performances of their copyrighted works and so granted their motion for partial summary judgment. Columbia Pictures Industries, Inc. v. Aveco, Inc., 612 F.Supp. 315 (M.D.Pa.1985). As a result, the court entered a permanent injunction order against Aveco.[1] The parties agree that this court must exercise plenary review, as there are no disputes of material fact and the question presented is one of interpreting the relevant law. Chrysler Credit Corp. v. First National Bank and Trust Co. of Washington, 746 F.2d 200, 202 (3d Cir.1984).
 
 
 3
 * Among their other operations, Producers distribute video cassette copies of motion pictures in which they own registered copyrights. They do so knowing that many retail purchasers of these video cassettes, including Aveco, rent them to others for profit. Aveco also makes available private rooms of various sizes in which its customers may view the video cassettes that they have chosen from Aveco's offerings. For example, at one location, Lock Haven, Aveco has thirty viewing rooms, each containing seating, a video cassette player, and television monitor. Aveco charges a rental fee for the viewing room that is separate from the charge for the video cassette rental.
 
 
 4
 Customers of Aveco may (1) rent a room and also rent a video cassette for viewing in that room, (2) rent a room and bring a video cassette obtained elsewhere to play in the room, or (3) rent a video cassette for out-of-store viewing.
 
 
 5
 Aveco has placed its video cassette players inside the individual viewing rooms and, subject to a time limitation, allows the customer complete control over the playing of the video cassettes. Customers operate the video cassette players in each viewing room and Aveco's employees assist only upon request. Each video cassette may be viewed only from inside the viewing room, and is not transmitted beyond the particular room in which it is being played. Aveco asserts that it rents its viewing rooms to individual customers who may be joined in the room only by members of their families and social acquaintances. Furthermore, Aveco's stated practice is not to permit unrelated groups of customers to share a viewing room while a video cassette is being played. For purposes of this appeal we assume the veracity of these assertions.
 
 II
 
 6
 As the owners of copyrights in motion pictures, Producers possess statutory rights under the Copyright Act of 1976, 17 U.S.C. Secs. 101-810. Among these are the exclusive rights set out in Section 106 and reproduced in the margin.[2] Producers do not, in the present litigation, allege infringement of their exclusive rights "to do and to authorize [the distribution of] copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." Thus, Aveco's rental of video cassettes for at-home viewing is not challenged.
 
 
 7
 Producers' claim in this litigation is based on the alleged infringement of their "exclusive right ... to perform the copyrighted work publicly" and to "authorize" such performances. Producers assert that Aveco, by renting its viewing rooms to the public for the purpose of watching Producers' video cassettes, is authorizing the public performance of copyrighted motion pictures.
 
 
 8
 Our analysis begins with the language of the Act. We first observe that there is no question that "performances" of copyrighted materials take place at Aveco's stores. "To perform" a work is defined in the Act as, "in the case of a motion picture or other audiovisual work, to show its images in any sequence or to make the sounds accompanying it audible." Section 101. As the House Report notes, this definition means that an individual is performing a work whenever he does anything by which the work is transmitted, repeated, or made to recur. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 63, reprinted in 1976 U.S.Code Cong. & Ad.News 5659, 5676-77.
 
 
 9
 Producers do not argue that Aveco itself performs the video cassettes. They acknowledge that under the Act Aveco's customers are the ones performing the works, for it is they who actually place the video cassette in the video cassette player and operate the controls. As we said in Columbia Pictures Industries v. Redd Horne, 749 F.2d 154, 158 (3d Cir.1984), "[p]laying a video cassette ... constitute[s] a performance under Section 101." However, if there is a public performance, Aveco may still be responsible as an infringer even though it does not actually operate the video cassette players. In granting copyright owners the exclusive rights to "authorize" public performances, Congress intended "to avoid any questions as to the liability of contributory infringers. For example, a person who lawfully acquires an authorized copy of a motion picture would be an infringer if he or she engages in the business of renting it to others for purposes of an unauthorized public performance." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 61, reprinted in 1976 U.S.Code Cong. & Ad.News at 5674; see S.Rep. No. 473, 94th Cong., 1st Sess. 57 (1975). In our opinion, this rationale applies equally to the person who knowingly makes available other requisites of a public performance. Accordingly, we agree with the district court that Aveco, by enabling its customers to perform the video cassettes in the viewing rooms, authorizes the performances.[3]
 
 
 10
 The performances of Producers' motion pictures at Aveco's stores infringe their copyrights, however, only if they are "public." The copyright owners' rights do not extend to control over private performances. The Act defines a public performance.
 
 
 11
 To perform ... a work "publicly" means--
 
 
 12
 (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances are gathered; or
 
 
 13
 (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same or at different times.
 
 
 14
 17 U.S.C. Sec. 101.
 
 
 15
 We recently parsed this definition in Redd Horne, a case similar to the one at bar. The principal factual distinction is that in Redd Horne's operation, known as Maxwell's Video Showcase, Ltd. ("Maxwell's"), the video cassette players were located in the stores' central areas, not in each individual screening room. Maxwell's customers would select a video cassette from Maxwell's stock and rent a room which they entered to watch the motion picture on a television monitor. A Maxwell's employee would play the video cassette for the customers in one of the centrally-located video cassette players and transmit the performance to the monitor located in the room. Thus, unlike Aveco's customers, Maxwell's clientele had no control over the video cassette players.
 
 
 16
 The Redd Horne court began its analysis with the observation that the two components of clause (1) of the definition of a public performance are disjunctive. 749 F.2d at 159. "The first category is self-evident; it is 'a place open to the public.' The second category, commonly referred to as a semi-public place, is determined by the size and composition of the audience." Id.
 
 
 17
 The court then concluded that the performances were occurring at a place open to the public, which it found to be the entire store, including the viewing rooms.
 
 
 18
 Any member of the public can view a motion picture by paying the appropriate fee. The services provided by Maxwell's are essentially the same as a movie theatre, with the additional feature of privacy. The relevant "place" within the meaning of Section 101 is each of Maxwell's two stores, not each individual booth within each store. Simply because the cassettes can be viewed in private does not mitigate the essential fact that Maxwell's is unquestionably open to the public.
 
 
 19
 749 F.2d at 159.
 
 
 20
 The Redd Horne court reached this conclusion despite the fact that when a customer watched a movie at Maxwell's, the viewing room was closed to other members of the public. Nevertheless, Aveco asserts that factual differences between Maxwell's stores and its own require a different result in this case.
 
 
 21
 Aveco first observes that when Maxwell's employees "performed" the video cassettes, they did so in a central location, the store's main area. This lobby was undeniably "open to the public." Aveco suggests that, in Redd Horne, the location of the customers in the private rooms was simply irrelevant, for the performers were in a public place, the lobby. In the case at bar, Aveco continues, its employees do not perform anything, the customers do. Unlike Maxwell's employees located in the public lobby, Aveco's customers are in private screening rooms. Aveco argues that while these viewing rooms are available to anyone for rent, they are private during each rental period, and therefore, not "open to the public." The performance--the playing of the video cassette--thus occurs not in the public lobby, but in the private viewing rooms.
 
 
 22
 We disagree. The necessary implication of Aveco's analysis is that Redd Horne would have been decided differently had Maxwell's located its video cassette players in a locked closet in the back of the stores. We do not read Redd Horne to adopt such an analysis. The Copyright Act speaks of performances at a place open to the public. It does not require that the public place be actually crowded with people. A telephone booth, a taxi cab, and even a pay toilet are commonly regarded as "open to the public," even though they are usually occupied only by one party at a time. Our opinion in Redd Horne turned not on the precise whereabouts of the video cassette players, but on the nature of Maxwell's stores. Maxwell's, like Aveco, was willing to make a viewing room and video cassette available to any member of the public with the inclination to avail himself of this service. It is this availability that made Maxwell's stores public places, not the coincidence that the video cassette players were situated in the lobby. Because we find Redd Horne indistinguishable from the case at bar, we find that Aveco's operations constituted an authorization of public performances of Producers' copyrighted works.
 
 
 23
 Aveco's reliance on the first sale doctrine is likewise misplaced. The first sale doctrine, codified at 17 U.S.C. Sec. 109(a), prevents the copyright owner from controlling future transfers of a particular copy of a copyrighted work after he has transferred its "material ownership" to another. Redd Horne, 749 F.2d at 159. When a copyright owner parts with title to a particular copy of his copyrighted work, he thereby divests himself of his exclusive right to vend that particular copy. Id. See United States v. Powell, 701 F.2d 70, 72 (8th Cir.1983); United States v. Moore, 604 F.2d 1228, 1232 (9th Cir.1979). Accordingly, under the first sale doctrine, Producers cannot claim that Aveco's rentals or sales of lawfully acquired video cassettes infringe on their exclusive rights to vend those cassettes.
 
 
 24
 However, in Redd Horne, we found that, because of the limited control the customer had over the video cassette, Maxwell's had not actually rented or transferred the ownership in the cassette to its customers. Because we found that there had not been a "future transfer," there was no opportunity to even apply the first sale doctrine.
 
 
 25
 In the case at bar, even assuming, arguendo, both a waiver by Producers of their Section 106(3) distribution rights and a valid transfer of ownership of the video cassette during the rental period, the first sale doctrine is nonetheless irrelevant. The rights protected by copyright are divisible and the waiver of one does not necessarily waive any of the others. See Section 202.[4] In particular, the transfer of ownership in a particular copy of a work does not affect Producers' Section 106(4) exclusive rights to do and to authorize public performances. Redd Horne, 749 F.2d at 160; Powell, 701 F.2d at 72; Moore, 604 F.2d at 1232. It therefore cannot protect one who is infringing Producers' Section 106(4) rights by the public performance of the copyrighted work.
 
 III
 
 26
 We therefore conclude that Aveco, by renting its rooms to members of the general public in which they may view performances of Producers' copyrighted video cassettes, obtained from any source, has authorized public performances of those cassettes. This is a violation of Producers' Section 106 rights and is appropriately enjoined. We therefore will affirm the order of the district court.[5]
 
 
 
 [1]
 The district court "permanently enjoined [Defendants] from performing or authorizing others to perform copyrighted motion pictures owned by the Plaintiffs at any place open to the public which is owned or operated by the Defendants without authority or permission of the Plaintiffs."
 
 
 [2]
 Section 106 states:
 Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
 (1) to reproduce the copyrighted work in copies or phonorecords;
 (2) to prepare derivative works based upon the copyrighted work;
 (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
 (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and
 (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.
 17 U.S.C. Sec. 106.
 
 
 [3]
 Aveco authorizes the performances that occur in the viewing rooms no less when the copyrighted video cassette is obtained from some other source. Aveco encourages the public to make use of its facilities for the purpose of viewing such tapes and makes available its rooms and equipment to customers who bring cassettes with them. By thus knowingly promoting and facilitating public performances of Producers' works. Aveco authorizes those performances even when it is not the source of Producers' copyrighted video cassettes. RCA Records v. All-Fast Systems, Inc., 594 F.Supp. 335 (S.D.N.Y.1984) (provisions of facilities used for unlawful copying enjoined as an infringement); Italian Book Corp. v. Palms Sheepshead Country Club, Inc., 186 U.S.P.Q. 326 (E.D.N.Y.1975)
 
 
 [4]
 Section 202 states:
 Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object.
 17 U.S.C. Sec. 202.
 
 
 [5]
 Aveco argues that the injunction is impermissibly overbroad in outlawing the rental of rooms to customers for the purpose of viewing Producers' video cassettes obtained elsewhere. We agree that the injunction forbids such activity, but not that it is overbroad. See n. 3, supra