COLUMBIA PICTURES INDUSTRIES, INC.; Embassy Pictures; Paramount Pictures Corporation; Twentieth Century–Fox Film Corporation; Universal City Studios, Inc.; Walt Disney Productions; Warner Bros., Inc.; CBS, Inc., Plaintiffs–Appellants,

v.

PROFESSIONAL REAL ESTATE IN-VESTORS, INC., dba La Mancha Private Club & Villas; Kenneth F. Irwin, Defendants–Appellees.

COLUMBIA PICTURES INDUSTRIES, INC.; Paramount Pictures Corporation; Twentieth Century–Fox Film Corporation; Universal City Studios, Inc.; Walt Disney Productions; Warner Bros., Inc.; CBS, Inc.; Embassy Pictures, Plaintiffs–Appellants,

v.

PROFESSIONAL REAL ESTATE IN-VESTORS, INC., dba La Mancha Private Club & Villas; Kenneth F. Irwin; Erland Kyllonen, Defendants–Appel-lees.

COLUMBIA PICTURES INDUSTRIES, INC.; Paramount Pictures Corporation; Twentieth Century–Fox Distribut-ing Corporation; Universal City Studi-os, Inc.; Walt Disney Productions; Warner Bros., Inc.; CBS, Inc.; Embas-sy Pictures, Plaintiffs–Appellants,

v.

PROFESSIONAL REAL ESTATE IN-VESTORS, INC., dba La Mancha Private Club & Villas; Kenneth F. Irwin, Defendants–Appellees.

Nos. 86–5641, 86–5664 and 86–5677.

United States Court of Appeals,
Ninth Circuit.

Argued Jan. 9, 1987.

Reargued and Submitted March 22, 1988.

Decided Jan. 17, 1989.

Stephen A. Kroft, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for plaintiffs-appellants.

Jeffrey W. King, Collier, Shannon, Rill & Scott, Washington, D.C., for defendants-appellees.

Before PREGERSON, ALARCON and O'SCANNLAIN, Circuit Judges.[*]

O'SCANNLAIN, Circuit Judge:

Columbia Pictures, Inc. and other appellants, all of which are motion picture producers, appeal the district court's grant of summary judgment in favor of Professional Real Estate Investors, Inc. and Kenneth Irwin, operators of La Mancha, a hotel resort in Palm Springs, California. The district court (William P. Gray, Senior United States District Judge, presiding) concluded that a hotel did not violate the Copyright Act by renting videodiscs for viewing on hotel-provided video equipment in guests' rooms. We affirm Judge Gray's decision.

[*] This case was originally argued before Judges Kennedy, O'Scannlain, and Wilkins. Upon his appointment to the Supreme Court of the United States in February 1988, Judge Kennedy was replaced by Judge Reinhardt. Prior to reargument, Judge Wilkins was replaced by Judge Pregerson. Subsequent to reargument, Judge

Reinhardt was replaced by Judge Alarcon, who has read the briefs and listened to the tapes of the reargument.

## FACTS AND PROCEEDINGS

La Mancha hotel guests may rent movie videodiscs from the lobby gift shop for a $5 to $7.50 daily fee per disc, which can be charged on the hotel bill. Each guest room is equipped with a large screen projection television and videodisc player. Hotel employees are available upon request to answer questions by guests about operating the in-room equipment. Guests view the videodisc movies projected on the television screens in their rooms.

After learning of these activities at La Mancha, Columbia Pictures, Inc. and six other motion picture studios ("Columbia") filed suit to prevent La Mancha[1] from renting videodiscs to its guests, alleging copyright infringement. La Mancha counterclaimed, alleging unfair competition and violation of antitrust laws. Cross-motions for summary judgment concerning the copyright infringement claim were thereafter filed.

The district court granted La Mancha's motion for summary judgment, concluding as a matter of law that the movies were not performed "publicly" within the meaning of the Copyright Act when hotel guests viewed them in their own hotel rooms. Columbia timely appealed.

■ Because this case was decided on summary judgment, our review is *de novo*. *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 852 (9th Cir.1988).

## DISCUSSION

We are asked to determine whether La Mancha has violated Columbia's exclusive right under the Copyright Act, 17 U.S.C. §§ 101–702 (the "Act"), to control the public performance of its copyrighted motion pictures. Because it is uncontroverted that the motion pictures have been "performed"

[1] Defendants Professional Real Estate Investors, Inc. and Kenneth Irwin will be referred to as "La Mancha" in this opinion.

within the meaning of the Act,[2] the narrow issue before us is whether La Mancha performed copyrighted works "publicly"[3] within the meaning of 17 U.S.C. § 106(4).

■ A performance may be characterized as public under the Act through application of two clauses which define the term "perform or display a work 'publicly.'" Under clause (1), a performance is public if it occurs "at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered." 17 U.S.C. § 101 (1977) (the "public place" clause). Under clause (2), a performance is public if someone "transmit[s] or otherwise communicate[s] a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." Id. (the "transmit" clause). Columbia argues that when La Mancha permits hotel guests to rent videodiscs for in-room viewing on hotel provided equipment, such actions constitute a public performance under either definitional clause of the Act.[4]

**2.** To "perform" a work is defined in the Copyright Act as, "in the case of a motion picture or other audiovisual work, to show its images in any sequence or to make the sounds accompanying it audible." 17 U.S.C. § 101 (1977).

**3.** The district court observed that the "first sale doctrine" allows one who purchases or rents videodiscs legally to view them in his or her home. *Columbia Pictures v. Professional Real Estate Investors,* 228 U.S.P.Q. 743, 745 (C.D.Cal. 1986). Judge Gray thereupon held that "the viewing of a motion picture in a hotel room is no different from viewing movies in a private home." *Id.* Columbia does not dispute La Mancha's right under the first sale doctrine itself; instead, it contends that the "public" nature of hotels takes this case outside the ambit of the first sale exception. Such an interpretation of the first sale doctrine would presumably protect La Mancha's rental of videodiscs to its guests (an issue we need not address) unless the public place or transmit clause applies.

**4.** Unless otherwise indicated, we assume that the legislative will is expressed by the ordinary

## A. Does the Public Place Clause Apply?

Columbia bases its copyright infringement claim against La Mancha upon section 106, which provides, in pertinent part:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

. . . . .

(4) in the case of . . . motion pictures . . . to perform the copyrighted work publicly.

■ Applying the public place clause of section 101, Columbia argues that because La Mancha's hotel rooms can be rented by members of the public, they are "open to the public," and therefore, movies viewed in a guest's room at La Mancha are "performed . . . publicly." The plain language and the legislative history together lead us to conclude that hotel guest rooms are not "public" for purposes of the Act.

Columbia largely relies upon two Third Circuit cases for its position. In *Columbia Pictures Industries v. Redd Horne,* 749 F.2d 154 (3d Cir.1984), the Third Circuit held that private viewing rooms would not escape the "public place" clause because the pertinent place was the entire store—which was public. *Id.* at 159. That court

meaning of the words used in the statute. *Moorhead v. United States,* 774 F.2d 936, 941 (9th Cir.1985). Consequently, the plain language is regarded as conclusive, *Central Montana Elec. v. Administrator of Bonneville Power,* 840 F.2d 1472, 1477 (9th Cir.1988), unless (1) the statutory language is unclear, (2) the plain meaning of the words is at variance with the policy of the statute as a whole, or (3) a clearly expressed legislative intent exists contrary to the language of the statute. *See Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–592, 7 L.Ed.2d 492 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that fulfilling our responsibility in interpreting legislation, 'we must . . . look to the provisions of the whole law, and to its object and policy.'") (citations omitted); *Escobar Ruiz v. I.N.S.,* 838 F.2d 1020, 1023 (9th Cir.1988). Ultimately, "[i]n construing statutes our goal is to 'ascertain the intent of Congress and to give effect to legislative will.'" *West Coast Truck Lines v. Arcata Comm. Recycling Center, Inc.,* 846 F.2d 1239, 1242 (9th Cir.1988) (quoting *Turner v. McMahon,* 830 F.2d 1003, 1007 (9th Cir.1987)).

drew its conclusion after determining that "[t]he services provided by Maxwells [the video stores] are essentially the same as movie theaters." *Id.*

In *Columbia Pictures Industries, Inc. v. Aveco, Inc.*, 800 F.2d 59 (3d Cir.1986), the court noted that "[o]ur opinion in *Redd Horne* turned not on the precise whereabouts of the video cassette players, but on the *nature* of Maxwell's stores. Maxwell's, like Aveco, was willing to make a viewing room and video cassette available to any member of the public with the inclination to avail himself of this service." *Id.* at 63 (emphasis added).

La Mancha's operation differs from those in *Aveco* and *Redd Horne* because its "nature" is the providing of living accommodations and general hotel services, which may incidentally include the rental of videodiscs to interested guests for viewing in guest rooms.

While the hotel may indeed be "open to the public," a guest's hotel room, once rented, is not. *See Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893–894, 11 L.Ed.2d 856 (1964) (constitutional protection from unreasonable searches and seizures in hotel rooms); *United States v. Winsor*, 846 F.2d 1569 (9th Cir.1988) (en banc) (same). This conclusion is further supported by common experience. La Mancha guests do not view the videodiscs in hotel meeting rooms used for large gatherings. The movies are viewed exclusively in guest rooms, places where individuals enjoy a substantial degree of privacy, not unlike their own homes.

Consideration of pertinent legislative history also compels our rejection of appellant's claim. The House Commentary on the 1976 version of the Act attempted to clarify the meaning of "perform the copyrighted work publicly":

Under Clause (1) of the definition of "publicly" in § 101, a performance ... is "public" if it takes place "at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social

acquaintances is gathered." One of the principal purposes of the definition was to make clear that, contrary to the decision in *Metro–Goldwyn–Mayer Dist. Corp. v. Wyatt*, 21 C.O. Bull. 203 (D.Md. 1932), performances in "semi-public" places such as clubs, lodges, factories, summer camps and schools are "public performances" subject to copyright control. The term "a family" in this context would include an individual living alone, so that a gathering confined to the individual's social acquaintances would normally be regarded as private. Routine meetings of businesses and governmental personnel would be excluded because they do not represent the gathering of a "substantial number of persons." [5]

H.R.Rep. No. 1476, 64, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5677–78. This passage from the legislative history reveals that Congress intended neither the number of persons at a performance nor the location of the performance to be determinative of the public character of a performance. Nevertheless, to the extent that a gathering of one's social acquaintances is normally regarded as private, we conclude that in-room videodisc movie showings do not occur at a "place open to the public."

### B. *Does the Transmit Clause Apply?*

Columbia also argues that La Mancha's rentals result in a public performance under the "transmit" clause. We disagree.

The crucial words of the transmit clause provide that a nonprivileged individual cannot "transmit or otherwise communicate" a copyrighted work. Columbia admits that Irwin's activities do not violate the "transmit" portion of this clause. The question then is whether La Mancha "otherwise communicate[s]" movies "to the public."

We hold that La Mancha does not "communicate" the in-room performances at all. Although the term "communicate" is undefined in the Copyright Act, and has countless meanings in common parlance,

---

5. Columbia does not assert the applicability of the second part of clause (1) beginning with "or at any place...." Thus, we need not consider this part of the clause.

we are not persuaded that facilitation of the in-room performance means that La Mancha "otherwise communicates" under the transmit clause.

■ A plain reading of the transmit clause indicates that its purpose is to prohibit transmissions and other forms of broadcasting from one place to another without the copyright owner's permission. The Act provides a definition of "transmit." "To 'transmit' a performance or display is to communicate it by any device or process whereby images and sounds are received beyond the place from which they are sent." Section 101. According to the rule of *ejusdem generis*, the term "otherwise communicate" should be construed consistently with the term "transmit." *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588, 100 S.Ct. 1889, 1895, 64 L.Ed.2d 525 (1980) (where general words follow the enumeration of specific terms, general words are read as applying only to other terms akin to those specifically enumerated); *Santa Fe Pacific R. Co. v. Secretary of Interior*, 830 F.2d 1168, 1175 (D.C.Cir. 1987). Consequently, the "otherwise communicate" phrase must relate to a "process whereby images or sounds are received beyond the place from which they are sent." Section 101.

This reading is reinforced by the rest of the transmit clause which refers to the use of transmission devices or processes and the reception by the public of the performance. Devices must refer to transmission or communication devices, such as, perhaps, wires, radio towers, communication satellites, and coaxial cable, while reception of the performance by the public describes acts, such as listening to a radio, or watching—network, cable, or closed-circuit—television "beyond the place" of origination.

In sum, when one adds up the various segments of clause (2), one must conclude that under the transmit clause a public performance at least involves sending out some sort of signal via a device or process to be received by the public at a place beyond the place from which it is sent.[6]

Nothing that La Mancha has done has violated this common sense construction of the transmit clause. While La Mancha has indeed provided the videodisc player, television screens, guest rooms, and makes videodiscs available in the lobby, we are not persuaded that any transmission of the kind contemplated by the statute occurs. If any transmission and reception occurs, it does so entirely within the guest room; it is certainly not received beyond the place from which it is sent. We are not persuaded that the term "otherwise communicate" can be read so broadly as to include the videodisc arrangements at La Mancha.

## CONCLUSION

■ We conclude that La Mancha does not violate section 106(4) by providing in-room videodisc players and renting videodiscs to its guests. In drawing this conclusion, we are aware that technology has often leapfrogged statutory schemes. Nevertheless, it is for Congress, not for the courts, to update the Copyright Act if it wishes to protect viewing of videodisc movies in guest rooms at La Mancha.[7]

AFFIRMED.

---

**6.** This interpretation is consistent with the latter section of the transmit clause which deals with reception of the performance "in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101 (1977). The "place" or "places" are perforce "beyond the place from which" the performances originate. *See* H.R.Rep. No. 1476, 65, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin. News 5659, 5678. *See also infra* note 7.

**7.** On appeal, Spectradyne, Inc. submitted an *amicus curiae* brief. Spectradyne, Inc. transmits movies within a closed circuit system in hotels on a pay per view basis. Spectradyne argues that (1) La Mancha's rental of videodiscs is an exhibition of motion pictures similar to Spectradyne's transmissions; (2) La Mancha's activities are public performances; and (3) the entire closed circuit industry is jeopardized by video rentals.

We reject all of Spectradyne's arguments. Spectradyne's closed circuit system falls squarely within the transmit clause of the Act. It uses wires to transmit a signal, employs a central transmission device, and the signal is received

at places beyond the place from which it is sent. While it might be true that Spectradyne's system could be hurt by the arrangements at La Mancha, Congress, not the courts, has the constitutional authority and the institutional ability to accommodate this clash of economic interests. *See Sony Corp. v. Universal City Studios,* 464 U.S. 417, 431, 104 S.Ct. 774, 783, 78 L.Ed.2d 574 (1984).

