640 F.2d 1107
 1981-1 Trade Cases 63,925
 AD VISOR, INC., a California corporation, and O'Connor
Agency, Inc., a California corporation, Plaintiffs-Appellees,
v.
PACIFIC TELEPHONE AND TELEGRAPH COMPANY, a California
corporation, General Telephone Company of California, a
California corporation, General Telephone Directory Company,
a Delaware corporation, and National Yellow Pages Service
Association, an unincorporated association, Defendants,
L. M. Berry & Company, an Ohio corporation, Defendant-Appellant.
 Nos. 80-5290, 80-5293.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1981.
Decided March 30, 1981.
 
 Robert E. Currie, Newport Beach, Cal., for defendant-appellant.
 Harry L. Gershon, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., for plaintiffs-appellees.
 Appeals from the United States District Court for the Central District of California, consolidated by order of this Court and in the district court but only for pretrial purposes.
 Before GOODWIN and ANDERSON, Circuit Judges, and MURPHY,* District Judge.
 MURPHY, District Judge:
 L. M. Berry & Company (Berry) appeals from a temporary injunction in each of the above actions enjoining it from prosecuting 63 separate California collection actions against, in each case, a single advertiser and its advertising agency, either Ad Visor, Inc. (Ad Visor) or O'Connor Agency, Inc. (O'Connor), the appellees, as the other defendant.
 Berry is a publisher and seller of nationally distributed telephone yellow pages advertising. Each plaintiff, appellee, is an advertising agency specializing in placing yellow pages advertising. These parties, Berry, Ad Visor and O'Connor, commenced business relations in September, 1977. Ad Visor and O'Connor would purchase and pay for nationally advertised yellow pages advertising for clients through Berry. This relationship continued uninterrupted from September, 1977 through 1978. Ad Visor and O'Connor paid for the advertising upon receipt of invoices and a tear sheet from Berry. No payments have been made to Berry since December, 1978.[1]
 Each Berry action is for nonpayment of published advertising. The claims are for breach of contract, on common counts, and for unjust enrichment. Berry seeks $172,137.76 from Ad Visor and its clients, and $414,484.09 from O'Connor and its clients, on outstanding but unpaid invoices. The record indicates that $70,000. additional has become due.
 The Underlying Antitrust Litigation
 In late November, 1977, Ad Visor filed an antitrust suit alleging violations of §§ 1 and 2 of the Sherman Act against all of the above named defendants except Berry. On April 20, 1979, O'Connor filed a duplicate of Ad Visor's complaint against all of the above named defendants and added Berry as a defendant. Eight months later, on December 17, 1979, Ad Visor filed its second amended and supplemental complaint, also adding Berry as a defendant. Immediately on the heels of Berry filing its answer to Ad Visor's amended complaint on January 4, 1980, both plaintiffs filed identical motions for preliminary injunctions on January 10, 1980. These motions were argued on April 1, 1980, and immediately thereafter the district court orally granted the motions, ruling: "With respect to the request for a preliminary injunction under the Inglis standard, that is granted as prayed." Later, in its filed Memorandum, it ordered "an injunction may issue pursuant to Section 16 of the Clayton Act enjoining a multiplicity of state court proceedings which have been brought in furtherance of an anticompetitive scheme, and used as a bludgeon to retain a monopoly and to interfere with the business relationships of a competitor," and fixed security for each plaintiff at $5,000.
 The Questions Presented
 1) Are Berry's state court actions protected from injunction by the Noerr-Pennington doctrine?[2]
 2) Was the district court barred from enjoining Berry's state court actions by the Anti-Injunction Act, 28 U.S.C. § 2283?
 3) Did the district court abuse its discretion in ordering the injunctions?
 The legal and factual issues before the district court were not whether there was a genuine issue of fact in the underlying antitrust actions that would entitle plaintiffs-appellees, as a matter of law, to a judgment (Rule 56, F.R.Civ.P.), but whether Berry's lawsuits in the state courts came under the aegis of Berry's First Amendment right "to petition the government for redress of private grievances."
 This Court has only recently reiterated the Noerr-Pennington doctrine.[3] Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 834 n.1 (9th Cir. 1980). In Hahn, Judge Anderson succinctly summarized what Justices Black and Douglas had held those cases established, namely, "the general rule that lobbying or other efforts by businessmen to obtain legislative, executive, or judicial action will not violate the antitrust laws, even though the purpose of their efforts may be to eliminate competition or otherwise restrain trade." Id. at 834 n.1. (emphasis ours).
 The nub of the district court's ruling, quoted above, is its conclusion that the 63 state court collection lawsuits "have been brought in furtherance of an anticompetitive scheme, and used as a bludgeon to retain a monopoly and to interfere with the business relationships of a competitor." This reasoning has no support in any of the cases discussing the Noerr-Pennington doctrine. The Noerr-Pennington doctrine is subject to an exception for activities which are a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Eastern Railroad Conference v. Noerr Motor Freight, 365 U.S. 127, 144, 81 S.Ct. 533, (1961). The cases following Noerr and Pennington show the "sham" exception to be a test of whether the efforts to obtain judicial or legislative action can be characterized as an abuse of process.
 The district court relied heavily on California Motor Transport v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), wherein the Supreme Court found that a pattern of baseless, repetitive claims could be an exception to the Noerr-Pennington protection. The import of that decision, however, is that such a pattern could lead to a conclusion of abuse of process which would then be an exception to Noerr-Pennington.
 "(A) pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused. That may be a difficult line to discern and draw. But once it is drawn, the case is established that abuse of those processes produced an illegal result, * * *." 404 U.S. at 513, 92 S.Ct. at 613.
 Although baseless, repetitive and sham claims may be an abuse, multiplicity, by itself, does not vitiate the Noerr-Pennington protections. This view finds further expression in Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), where Justice Blackmun, concurring, discussed Trucking Unlimited :
 
 
 1
 "Since I believe that federal courts should be hesitant indeed to enjoin ongoing state-court proceedings, I am of the opinion that a pattern of baseless, repetitive claims or some equivalent showing of grave abuse of the state courts must exist before an injunction would be proper." 433 U.S. at 644, n.* 97 S.Ct. at 2894, n.* (emphasis ours).
 
 
 2
 No case can be found which finds multiple claims brought with the purpose of interfering with others' business relationships to be unprotected by Noerr-Pennington. In each case of "sham," an improper interference with administrative or judicial process is found.
 
 
 3
 In sum, Berry's state court collection suits are fully protected under its First Amendment right "to petition the government (the judiciary) for redress of private grievances," and in no manner a violation of the Sherman Act.
 
 
 4
 The district court was misled and deceived by appellees' emphatic and repetitive argument that Berry conceded the "facts" by not contesting them. The "facts" were allegations of 4 per se violations of the antitrust laws contained in the complaints in the underlying actions. Berry had denied each material fact in those pleadings, creating issues to be determined at trial, and which had not the remotest connection or relevancy to Berry's state court collection actions.
 
 
 5
 Berry was not required by these motions for injunctions to file affidavits justifying its denials in its pleadings.
 
 
 6
 It is clear to us, as it was evident to the district court by its failure to find to the contrary, that Berry's state court actions were neither baseless nor repetitive. Calling these lawsuits sham abuses the meaning of that colloquialism. Berry submitted to the court transcripts of the sworn testimony of O'Connor's President in a recent trial in which he acknowledged under oath that his company owed Berry approximately $400,000 on outstanding and unpaid invoices for advertising. Ad Visor's President, in his affidavit, was more subtle. He allowed that his company may owe Berry some money.
 
 
 7
 It is more than significant that not one client of appellees made an affidavit in support of the motions, and it is simply not true that any client of appellees was sued more than once. One was merely served twice with the same summons and complaint because of questionable personal service.
 
 
 8
 Not only should the injunctions be dissolved because they violate the Noerr-Pennington doctrine, but the district court's findings were without any factual or legal basis and thus an abuse of discretion.
 
 
 9
 Adopting the trite phrase from appellees' brief, "incredible as it seems," the most that was presented to the district court was a torrent of words and arguments from the lexicon of antitrust litigation concealing the absence of any probative facts for the court to exercise its discretion and misleading it into granting the injunctions and fixing a grossly inadequate security.
 
 
 10
 We do not reach the arguments addressed to the Anti-Injunction Act and the Supreme Court's 3-2-4 decision in Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977).
 
 
 11
 The injunctions are dissolved, with costs to appellant. The mandate shall issue forthwith.
 
 
 
 *
 Honorable Thomas F. Murphy, United States District Judge, Southern District of New York, sitting by designation
 
 
 [1]
 Berry filed 30 separate suits against Ad Visor and its individual clients, and 33 suits against O'Connor and its individual clients. The district court stated that the numbers were 28 against Ad Visor and its clients and 15 against O'Connor and its clients. The court also considered lawsuits by Berry against a third advertising agency, Glen Martin, which is not a party in this litigation
 
 
 [2]
 Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc. (Noerr), 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United Mine Workers of America v. Pennington, (Pennington), 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)
 
 
 [3]
 It is probably only a twist of fate that in Noerr the supposed villain was the famous advertising personality, Carl Byoir, whose firm did all of the publicity on behalf of the railroads against the motor trucking industry. The court concluded, however, that he was merely exercising, for a sizeable fee, his First Amendment rights. Id., 139-141, 81 S.Ct. 530-531