901 F.2d 266
 58 USLW 2621, 1990-1 Trade Cases 68,999
 JUSTER ASSOCIATES and Juster Development Company,
Plaintiffs-Appellants,
v.
CITY OF RUTLAND, VERMONT, William Finard, Damian Zamias,
Steven Mosites, the Zamias Group, Inc., Rutland Associates,
Finard-Rutland Realty Limited Partnership, Rutland-Zamias
Limited Partnership, Finard-Zamias Associates, and
Finard-Zamias Rutland Development Company, Defendants-Appellees.
 No. 579, Docket 89-7747.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 2, 1990.
Decided April 12, 1990.
 
 Alan B. George, Rutland, Vt. (Timothy Martin, Carroll, George & Pratt, Rutland, Vt., of counsel), for Plaintiffs-Appellants.
 John H. Shenefield, Washington, D.C. (Peter E. Halle, Michael F. Clayton, Melinda R. Hatton, Morgan, Lewis & Bockius, Washington, D.C., Gary H. Barnes, Robert A. Miller, Jr., Downs, Rachlin & Martin, Burlington, Vt., Barry Waxman, Finard & Co., Burlington, Mass., of counsel), for Defendants-Appellees.
 David L. Cleary, Rutland, Vt. (Miller, Cleary & Faignant, Rutland, Vt. of counsel), for Defendant-Appellee City of Rutland.
 Before KEARSE and WINTER, Circuit Judges, and HAIGHT,* District Judge.
 WINTER, Circuit Judge:
 
 
 1
 This antitrust action pits developers who are seeking permits necessary to begin construction of a new shopping mall against the owners of an existing mall who possess permits allowing them to double its size. The novel aspect of this not-unusual scenario is that the existing mall is accusing its as-yet non-existent competitor of monopolistic practices.
 
 
 2
 Two New York partnerships that wish to expand their shopping mall in Rutland, Vermont have sued the City of Rutland and several prospective developers of a new shopping center in the Rutland area, claiming that the City and the developers have conspired to restrain trade and to monopolize the market of leasing space in violation of federal antitrust laws, see 15 U.S.C. Secs. 1, 2, 15, 26 (1988); that they have tortiously interfered with the plaintiffs' business relationships; and that they have deprived plaintiffs of property interests without due process in violation of 42 U.S.C. Sec. 1983 (1982) ("Section 1983"). Chief Judge Billings granted judgment on the pleadings and dismissed the complaint. Because the complaint fails to allege antitrust injuries and because the defendants are immune from antitrust liability under the Noerr-Pennington doctrine, we affirm.
 
 BACKGROUND
 
 3
 Plaintiff Juster Associates, a New York limited partnership, owns the Rutland Mall in the Town of Rutland, Vermont ("Town of Rutland" or "the Town"). Plaintiff Juster Development Company ("JDC"), a New York general partnership, proposes to develop an extension of the Rutland Mall with Juster Associates on JDC's adjoining land. Juster Associates and JDC (collectively "Juster") possess the licenses and permits necessary to expand the mall to double its current size.
 
 
 4
 Defendant City of Rutland ("City of Rutland" or "the City") is a municipal corporation. Defendant Finard-Zamias Associates ("FZA") is a developer that has applied for a land-use permit under Vermont law, Vt. Stat. Ann. tit. 10, Secs. 6001-6092 (1984) ("Act 250"), regarding its proposed development of a regional shopping center in the Town of Rutland adjacent to the City of Rutland. Defendants William Finard, Damian Zamias, and Steven Mosites are partners in FZA (collectively "the Developers").
 
 
 5
 Act 250 requires, inter alia, that shopping center developers obtain approval for their projects from the state-appointed District Environmental Commission ("Commission"). Vt. Stat. Ann. tit. 10, Sec. 6086 (1984 & Supp.1989). That the Commission takes into account the views of major municipalities in granting or denying approval to projects is not seriously disputed by the parties. There is also no question that the City of Rutland has played an active role with regard to the Juster and FZA developments in an effort to protect what it perceives as its interests. In fact, the City of Rutland was granted party status before the Commission in proceedings concerning both Juster's and FZA's applications.
 
 
 6
 On September 27, 1988, the City of Rutland and the Developers, acting through their Vermont corporation Finard-Zamias Rutland Development Company ("FZR"), entered into an agreement regarding the Developers' proposed new regional shopping center. The agreement noted the Developers' need for the cooperation and assistance of the City to satisfy various permit requirements of Act 250 and provided for the payment of direct and indirect impact fees by FZR to the City. In particular, FZR agreed to offset any adverse impact on the City's municipal services or tax base through one of three means: (1) payment of impact fees, (2) investment of at least $10 million in non-residential real estate in the City, or (3) adoption, with legislative approval, of a gross-receipts user fee. FZR also agreed to provide other long-term support to the Rutland community, including housing assistance, public transportation, regional promotional activities, and cultural and social activities. In return, FZR gained access to the City's water supply and sewage facilities at most-favored customer rates, obtained assurances that the City would improve transportation routes and traffic control around the development, and won the active support of the City in FZA's Act 250 permit proceedings. Finally, FZR agreed to refrain either from actively recruiting tenants for the regional shopping center from the City's central business district or from actively promoting relocation of existing businesses from within the City limits.
 
 
 7
 Meanwhile, the City had unsuccessfully opposed Juster in Act 250 proceedings regarding Juster's proposed expansion of the Rutland Mall. Juster, which is thus now armed with the necessary permits to expand its mall, filed this complaint on January 23, 1989. On April 17, 1989, the City filed a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c), and the other defendants filed a motion for dismissal under Fed.R.Civ.P. 12(b)(6). The district court granted both motions. Juster appeals.
 
 DISCUSSION
 
 8
 We affirm the judgment for two reasons. First, with regard to the claims under Sections 1 and 2 of the Sherman Act, the complaint's allegations that Juster has suffered damage because the City of Rutland has subsidized or otherwise aided the Developers in their attempt to build their shopping center do not constitute an antitrust injury. Second, assuming arguendo that the agreement between the City and the Developers restricts competition, they are immune from liability under the antitrust laws.
 
 
 9
 We apply the usual standard of review that, for purposes of Rule 12(b)(6), we view all facts and allegations in the complaint in the light most favorable to Juster. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The standard for Rule 12(c) is essentially the same for purposes of the present complaint: the City is entitled to judgment on the pleadings only if it has established "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1368, at 690 (1969); see also MacDonald v. Du Maurier, 144 F.2d 696, 700-01 (2d Cir.1944) (stating that plaintiff's allegations must be accepted despite the answer's denial of their veracity).
 
 
 10
 We turn first to Juster's claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. Secs. 1, 2 (1988). To prevail on such claims, Juster must assert "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Juster has not alleged such an injury.
 
 
 11
 As we stated in R.C. Bigelow, Inc. v. Unilever N.V., 867 F.2d 102, 109 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989), the mere fact of increased competition and reduced profits resulting from an agreement between other parties does not constitute an antitrust injury to a plaintiff. See also Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 116, 107 S.Ct. 484, 498, 93 L.Ed.2d 427 (1986). Juster may thus well be "in a worse position than [it] would have been" had the challenged agreement not been executed, Brunswick, 429 U.S. at 486, 97 S.Ct. at 696, but that fact does not by itself establish an antitrust injury. To hold otherwise would be to "divorce[ ] antitrust recovery from the purposes of the antitrust laws," id. at 487, 97 S.Ct. at 697, which were "enacted for 'the protection of competition, not competitors,' " id. at 488, 97 S.Ct. at 697 (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original)).
 
 
 12
 We have applied these principles to a claim similar to Juster's and have found no antitrust injury. In Eastway Constr. Corp. v. City of New York, 762 F.2d 243 (2d Cir.1985), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), we upheld against an antitrust challenge an agreement between New York City and a private consortium of banks that denied the plaintiff construction company access to low-cost mortgage lending. Stating that the plaintiff had failed even to allege, much less to show, any anticompetitive effects on consumers from its exclusion from the lending market by contract between New York and the consortium, we affirmed the district court's grant of summary judgment to the defendants. See id. at 251.
 
 
 13
 The agreement in this case presents even less of an arguable antitrust injury than did the agreement in Eastway. Here, the agreement between the City and the Developers provided for payment of impact fees by the Developers to the City and support by the Developers for various public projects in the City. This portion of the agreement raises the Developers' costs and in no way injures competition. In fact, it doesn't even injure Juster. In exchange, the Developers gained access, at most-favored customer rates, to the water and sewage facilities of the City, as well as a promise of improvements in transportation routes to the regional shopping center. Although access to these municipal facilities and the promise of improvements no doubt aid the Developers, they do so by making their project more attractive to consumers than it would otherwise be. This is not an injury to competition, no matter how injurious it may be to Juster as a competitor.
 
 
 14
 Finally, the City pledged its support for the Developers in the Act 250 permit proceedings. This support is no more than part of a not-unusual bargain struck between a municipality and a developer for the purpose of controlled growth of commercial real estate. The Developers have no market share whatsoever at present, and the alternative to negotiating with the City is to attempt to obtain a permit without the City's support. Without that support, of course, they might fail, a result beneficial to Juster as a competitor but hardly in the interests of consumers. The agreement attacked by Juster is thus a vehicle by which competitors can challenge existing firms. Were courts to strike down such agreements, potential new entrants to a market would find entry more difficult, and consumers would suffer. Juster's claim is thus designed to enhance barriers to entry of new competitors, a result that would stand antitrust law on its head.
 
 
 15
 Even if one reads the complaint to allege that Juster is at a disadvantage because the City of Rutland is subsidizing the new mall, still no antitrust harm has been alleged. Such a disadvantage would derive solely from the fact that subsidization reduces the costs and increases the attractiveness of the new mall, therefore allowing it to compete more effectively with Juster. Although Juster's concern is understandable, we perceive no harm to consumers in the decision of the City's taxpayers to subsidize more attractive shopping conditions or lower prices to shoppers at the Developers' mall in order to ameliorate the taxpayers' concerns about the impact of new development on their municipality.
 
 
 16
 Having held that the City of Rutland's support for the Developers' proposed regional shopping center does not create any antitrust injury, we also address the City's and Developers' claim that they are immune from liability under the antitrust laws. We reach the issue of immunity because the district court based its rulings partially on the fact that the Developers have not yet entered the market and expressly left open the possibility that Juster may bring another antitrust suit once the Developers enter the market and gain some market power. The Developers are apprehensive that further litigation concerning their agreement with the City will occur when they enter the market. To foreclose a further challenge to that agreement, we address the Developers' claim of immunity.[1]
 
 
 17
 In Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the Supreme Court held that the Sherman Act did not apply to lobbying "to seek action on laws in the hope that [the lobbying parties] may bring about an advantage to themselves and a disadvantage to their competitors," id. at 139, 81 S.Ct. at 530, regardless of "any anticompetitive purpose it may have had," id. at 140, 81 S.Ct. at 531. In doing so, the Court recognized that attempts to influence legislation were an inherent part of the political process protected by the First Amendment. Id. at 137-38, 145, 81 S.Ct. at 529-30, 533. Four years later, in United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the Court extended this immunity to attempts to influence administrative processes, again "regardless of intent or purpose," id. at 670, 85 S.Ct. at 1593. The Court in Pennington thus held that "efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." Id. Of course, to be immune, participation in administrative or judicial processes must be for the purpose of asserting colorable claims within the jurisdiction of the particular tribunal. Where administrative or judicial processes are invoked for the purpose of causing collateral effects such as delaying entry by competitors, see California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), or where those processes are invoked by means that violate ethical standards applicable to adjudicative tribunals, see Landmarks Holding Corp. v. Bermant, 664 F.2d 891 (2d Cir.1981), the Noerr-Pennington immunity is not available.
 
 
 18
 Central to the agreement between the Developers and the City was the Developers' desire for the City's support in the Act 250 proceedings regarding their application. The City's views were important to the Commission, and it was formally a party to the FZA Act 250 proceedings. Whether gaining support from the City was essential or merely helpful, seeking it was within the realm of conduct protected by the First Amendment and thus immunized by the Noerr-Pennington doctrine. We believe, therefore, that the activities of the Developers and the City in negotiating their agreement are immunized from antitrust liability.
 
 
 19
 The Supreme Court's decision in Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988), in which it distinguished "anticompetitive political activity that is immunized despite its commercial impact from anticompetitive commercial activity that is unprotected despite its political impact," id. at 507-08 n. 10, 108 S.Ct. at 1941 n. 10, does not preclude application of the Noerr-Pennington doctrine in the instant matter. In Allied Tube, members of the steel industry packed an annual meeting of the National Fire Protection Association with new members solely to vote against a new type of electrical conduit that posed an economic threat to steel conduit. See id. at 495-97, 108 S.Ct. at 1937. The Supreme Court, in holding that this action was not immune under Noerr-Pennington, stated that "this is itself a case close to the line" between anticompetitive political activity and anticompetitive commercial activity, and it cautioned that its decision "depends on the context and nature of the activity." See id. at 508 n. 10, 108 S.Ct. at 1941 n. 10. If the activity in Allied Tube, which involved influencing a private organization's position on a potentially public issue, was close to the line, then the activities of the Developers and the City in this case, which involved the City's direct support as a party to the Act 250 proceedings, falls on the side of the line protected by Noerr-Pennington immunity.
 
 
 20
 The Supreme Court's recent decision in Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n, --- U.S. ----, 110 S.Ct. 768, 107 L.Ed.2d 851 (1990), also does not alter this conclusion. In Superior Court, the Court held that a boycott by trial lawyers in private practice who acted as court-appointed counsel for indigent defendants was not immune from antitrust liability. In doing so, the Court reviewed its decisions in Noerr and Allied Tube, distinguishing the former from Superior Court on the grounds that the restraint of trade effected by the boycott in Superior Court "was the means by which respondents sought to obtain favorable legislation." Superior Court, 110 S.Ct. at 776 (emphasis in original). By contrast, the Court noted, the restraint of trade in Noerr "was the intended consequence of public action." Id. (emphasis in original). The activity at issue in this case is within the ambit of the protection afforded by Noerr because, like Noerr, the claimed restraint of trade is the consequence of the governmental action.
 
 
 21
 Juster's remaining arguments are wholly without merit. The Section 1983 claim was properly dismissed because it failed to state any deprivation of a constitutionally protected property interest. As Chief Judge Billings held, Juster has failed to identify contractually established business relationships that will be disrupted as a result of defendants' conduct. Juster's interests in possible future relationships with tenants at the Rutland Mall do not constitute property interests of the sort protected by the Constitution, for Juster cannot claim to have "a legitimate claim of entitlement" to these benefits. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
 
 
 22
 Finally, Juster's state-law claim of tortious interference with business relationships was properly dismissed because Juster failed to allege more than the possibility that it may face legitimate competition. See Giroux v. Lussier, 126 Vt. 555, 561, 238 A.2d 63, 67 (1967). The actions it complains of in this claim are virtually identical to the conduct made the basis of its antitrust claims, discussed supra. There is nothing tortious about competition.
 
 
 23
 Affirmed.
 
 
 
 *
 The Honorable Charles S. Haight, Jr., United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The City is immune from antitrust liability for damages under the Local Government Antitrust Act, 15 U.S.C. Secs. 34-36 (1988) ("LGAA"). The LGAA provides that "[n]o damages, interest on damages, costs, or attorney's fees may be recovered under [the antitrust laws] from any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. Sec. 35(a). Because "local government" includes "a city," 15 U.S.C. Sec. 34(1)(A), Rutland is obviously immune from suit for damages