COLUMBIA PICTURES INDUSTRIES, INC.; Embassy Pictures; Paramount Pictures Corporation; Twentieth Century Fox Film Corporation; Universal City Studios, Inc.; Walt Disney Productions; Warner Bros. Inc.; CBS, Inc., Plaintiffs-counter-defendants-Appellees,

v.

PROFESSIONAL REAL ESTATE INVESTORS, INC.; Kenneth F. Irwin, Defendants-counter-claimants-Appellants.

Nos. 90–55583, 90–55668.

United States Court of Appeals, Ninth Circuit.

Argued June 5, 1991.

Decided Sept. 24, 1991.

Jeffrey W. King, Collier, Shannon & Scott, Washington, D.C., for defendants-counter-claimants-appellants.

Stephen A. Kroft, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for plaintiffs-counter-defendants-appellees.

Before FLETCHER and CANBY, Circuit Judges, and McNICHOLS,[*] District Judge.

CANBY, Circuit Judge:

Counterclaimants Professional Real Estate Investors and Kenneth Irwin (collectively "PRE") appeal from the entry of an order granting summary judgment in favor of the counterdefendants Columbia Pictures Industries and seven other movie studios (collectively "Columbia Pictures" or "Movie Studios").[1] This appeal involves the propriety of the summary judgment and the applicability of the *Noerr–Pennington* doctrine.

## BACKGROUND

This case is before us for the second time. In *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 866 F.2d 278 (9th Cir.1989), we af-

---

[*] The Honorable Robert J. McNichols, United States Senior District Judge for the Eastern District of Washington, sitting by designation.

[1] The eight movie studios are: Columbia Pictures Industries, Inc.; Embassy Pictures; Paramount Pictures Corporation; Twentieth Century Fox Film Corporation; Universal City Studios, Inc.; Walt Disney Productions; Warner Bros. Inc., and CBS, Inc.

firmed the district court's grant of summary judgment in favor of PRE on Columbia Pictures' copyright infringement claim. Because Columbia's infringement claim was largely the subject of PRE's counterclaims, we briefly review the facts regarding the original claim and the course of proceedings.

In April 1983, Columbia Pictures brought a copyright infringement action against PRE and Irwin, the operators of La Mancha Private Club and Villas, a resort hotel. Columbia Pictures alleged that PRE violated the Movie Studios' copyrights to certain motion pictures by renting videodiscs of those pictures to La Mancha's guests for viewing on videodisc players placed in the hotel rooms.

PRE denied any wrongdoing [2] and filed counterclaims charging that the Movie Studios had violated the Sherman Act and state antitrust and unfair competition laws. In support of its antitrust claims, PRE charged that the copyright infringement suit was a sham brought with the intent to monopolize and restrain trade. In addition, PRE alleged that the Movie Studios' concerted refusal to grant licenses to PRE to rent the videos, as well as other unspecified activities, constituted a pattern of anticompetitive conduct.

After a series of discovery disputes, the parties filed cross-motions for summary judgment on the copyright infringement claim. At the court's request, the parties postponed further discovery on the antitrust counterclaims pending resolution of the cross-motions. In January 1986, the district court entered summary judgment in favor of PRE and against Columbia Pictures. The court concluded that hotel

rooms were not public, and that renting videodiscs for viewing in hotel rooms therefore did not constitute unauthorized public performances in violation of the Movie Studios' copyrights. The court entered its decision as a separate final judgment, and Columbia Pictures appealed.

Three months later, PRE filed a second motion to compel discovery. The district court denied the motion and stayed discovery on the counterclaims pending resolution of Columbia Pictures' appeal of the copyright claim. The court reasoned that the result of the appeal might affect the scope of discovery. Three years later, after numerous changes in the composition of the appellate panel, this court affirmed the summary dismissal of the copyright action. *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.,* 866 F.2d 278 (9th Cir.1989).

Soon thereafter, PRE requested a scheduling conference limiting the time to complete discovery. As a result of the conference, Columbia Pictures agreed to produce certain documents by August 30, 1989. In September, Columbia Pictures delivered some of the requested documents to PRE.

On September 22, 1989, Columbia Pictures moved for summary judgment on PRE's antitrust counterclaims. PRE filed an opposition to the motion, in which it asserted the right to take further discovery. The only evidence offered by PRE in support of its opposition was a declaration by Irwin. PRE did not submit any of the documents that the Movie Studios had produced in discovery.[3]

The district court granted the Movie Studios' motion for summary judgment. The court held that the copyright infringement

---

**2.** There was no claim that PRE had breached any copyright laws in originally purchasing the videodiscs. The dispute was only over the subsequent rental for viewing in rented hotel rooms.

**3.** We grant Columbia Pictures' motion to strike pages 548–550 and 554–557 from PRE's excerpt of record. PRE did not present these materials to the district court in opposition to Columbia Pictures' motion for summary judgment. *See United States v. Elias,* 921 F.2d 870, 874 (9th Cir.1990). We disagree with PRE's assertion

that these materials were before the district court because PRE had referred to the materials in various discovery requests and pleadings. The record on summary judgment consists of those items referred to in the parties' summary judgment memorandum. A trial judge is not required to peruse every document in the record in ruling on a motion for summary judgment. *Harkins Amusement Enterprises, Inc. v. General Cinema Corp.,* 850 F.2d 477, 482 (9th Cir.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 817, 102 L.Ed.2d 806 (1989).

action was not a "sham", and that, as a result, the Movie Studios' bringing of that action was immune from antitrust liability under the *Noerr–Pennington* doctrine. In support of its conclusion, the court stated:

> [I]t was clear from the manner in which the case was presented that the plaintiff was seeking and expecting a favorable judgment. Although I decided against the plaintiff, the case was far from easy to resolve, and it was evident from the opinion affirming my order that the court of appeals had trouble with it as well. I find that there was probable cause for bringing the action....

On the basis of its finding that the action was not a sham, the court also held that further discovery was not required. Finally, the court dismissed PRE's pendent state law claims.

## ANALYSIS

PRE asserts that summary judgment in favor of Columbia Pictures was improper because: (1) the court focused only on the lawsuit and failed to consider PRE's other allegations of anticompetitive conduct; (2) the copyright infringement action was a sham; and (3) the court should have permitted PRE additional discovery to prove that the copyright lawsuit was a sham. PRE also argues that the district court abused its discretion in dismissing the pendent state law claims. We address these arguments in turn.

### 1. Anticompetitive conduct

PRE argues that the summary judgment was improper because the district court failed to consider PRE's other allegations of anticompetitive conduct. In addition to the copyright suit, PRE alleged that the Movie Studios: (1) concertedly refused to grant licenses to PRE to rent videodiscs to its guests; (2) filed or threatened to file similar copyright suits to intimidate other hotels and resorts from adopting similar video rental programs; (3) entered restrictive distribution agreements prohibiting the rentals of videos except for home use; (4) attached misleading copyright labels to their videos stating that viewing of the video was restricted to home use; and (5) published threatening advertisements in hotel trade journals warning hotels not to rent or use the plaintiffs' copyrighted videos for viewing in guest rooms. Although the court did not address these additional allegations,[4] we conclude that reversal is not required.

■ PRE's first allegation—the concerted refusal to deal—relates to PRE's attempts, after Columbia Pictures instituted the copyright infringement action, to obtain licenses from the Movie Studios to use and install in-room videodisc systems in the guest rooms. On the facts of this case, PRE's request for licensing amounted to an offer to settle the lawsuit. If Columbia Pictures agreed to license PRE, the lawsuit would be moot.

■ A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and not a separate and distinct activity which might form the basis for antitrust liability. Consequently, PRE's ability to establish that the

---

**4.** We disagree with the Movie Studios' assertion that the district court carefully considered and rejected the refusal to deal allegation at oral argument on December 18, 1989. At the hearing, the court discussed the claim, but did not make a ruling. The court took the motion to dismiss under submission to determine the applicable law. The court did not address this issue again, either at the hearing or in the subsequent order granting summary judgment.

We also reject the Movie Studios' argument that the only other allegation of anticompetitive conduct made by PRE was the concerted refusal to deal. PRE's complaint alleges:

> [The Movie Studios] engaged in and continue to engage in the following activities, among

others: the filing of this suit, which is a sham and false and known by plaintiffs to be so; bad faith prosecution of this suit; boycotting and concertedly refusing to grant licenses to defendants to rent videodiscs; *and other activities* to coerce defendants into acquiescing to plaintiffs' attempts to monopolize, restrain and eliminate the relevant trade and commerce and to destroy counter-claimants' business.

(Emphasis added). PRE detailed the other four claims of anticompetitive conduct and set out their factual allegations in various motions for discovery. Moreover, PRE included all five allegations in its opposition to the motion for summary judgment.

Movie Studios' refusal to deal violated the Sherman Act depends on its success or failure in showing that the copyright infringement action is actionable under the federal antitrust laws. *See generally Aircapital Cablevision, Inc. v. Starlink Communications Group, Inc.,* 634 F.Supp. 316, 326 (D.Kan.1986) (where underlying litigation is not a sham, attendant publicity is protected by *Noerr–Pennington* doctrine). This issue is discussed in section 2, *infra.*

■ The four remaining allegations do not establish a violation of either section 1 or section 2 of the Sherman Act because PRE failed to demonstrate that the alleged conduct caused antitrust injury. *See Rickards v. Canine Eye Registration Foundation, Inc.,* 783 F.2d 1329, 1332, 1335 (9th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 180, 93 L.Ed.2d 115 (1986) (to establish a violation of Sherman Act sections 1 or 2, an antitrust plaintiff must establish the element of "causal antitrust injury"). PRE neither pleaded nor presented evidence that the La Mancha Resort's videodisc rental service had been interrupted, that the Resort lost a single guest, or that the Movie Studios' conduct prevented Irwin from marketing the Resort's video viewing system to other hotels. We note that PRE did not need formal discovery procedures to establish resulting antitrust injury to the resort or to ascertain the basis for other hotels' rejection of Irwin's video system.

■ We reject PRE's argument that Kenneth Irwin's declaration provides an initial showing of the injury element. Irwin's affidavit does not satisfy the requirements of Fed.R.Civ.P. 56(e).[5] The affidavit states in relevant part:

> I had attempted to develop a market for the sale and installation of video disc player equipment to other hotels for private, in-room, movie viewing. As an RCA representative, I had contacted other hotels in an attempt to install video disc player equipment using the in-room video technology employed at our La Mancha facility. I believe that hotels were reluctant to invest in in-room video viewing systems out of fear of litigation with the counterdefendant movie studios. I believe further that larger chains, in particular, were reluctant to make a substantial investment in video technology absent a license from the movie studios.

Because Irwin's declaration is not based on personal knowledge, but on information and belief, his statement does not raise a triable issue of fact regarding antitrust injury. *See Taylor v. List,* 880 F.2d 1040, 1045 n. 3 (9th Cir.1989).

2. *Noerr–Pennington*

If the bringing of Columbia's copyright infringement suit violated the antitrust laws, however, the costs of defending the suit would constitute antitrust injury. *Rickards,* 783 F.2d at 1334–35. We therefore address PRE's claim that the infringement suit itself violated the antitrust laws.

■ Under the *Noerr–Pennington* doctrine,[6] the filing of a lawsuit is immune from the antitrust laws unless the suit is a "sham." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972). A sham suit is one that is an abuse of the judicial processes. *Id.* at 513, 92 S.Ct. at 613. In *California Transport,* the Supreme Court identified two types of sham activity: "misrepresentations ... in the adjudicatory process" and the pursuit of "a pattern of baseless, repetitive claims." *Id.* Thus, in *California Transport,* the Court held that a complaint alleging that the petitioner's competitors initiated administrative proceedings against the petitioner "without probable cause, and regardless of the merits," stated an antitrust cause of action. *Id.* at 512, 92 S.Ct. at 612.

---

**5.** Rule 56(e) provides:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

**6.** *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

■ Columbia Pictures' copyright infringement action does not involve either of these two types of sham activity. PRE does not allege that the lawsuit involved misrepresentations. Moreover, PRE does not challenge the district court's finding that the infringement action was brought with probable cause, i.e., that the suit was not baseless. Rather, PRE argues that the copyright infringement lawsuit is a sham because Columbia Pictures did not honestly believe that the infringement claim was meritorious. According to PRE, Columbia Pictures' subjective intent in bringing the suit was a question of fact precluding entry of summary judgment.

Curiously, PRE cites our decision of *Rickards v. Canine Eye Registration Foundation, Inc.*, 783 F.2d at 1334, and the Fifth Circuit's decision of *In re Burlington Northern, Inc.*, 822 F.2d 518, 529 (5th Cir.1987), in support of its assertion that a suit is a sham if the litigant did not have an honest belief that the suit was meritorious. These two opinions, however, are at odds with each other in their analysis of whether a lawsuit is a sham. We have not followed the Fifth Circuit's approach in evaluating this issue.

In *In re Burlington Northern, Inc.*, the Fifth Circuit held that a litigant's subjective motivation in bringing a lawsuit is a factor in determining whether the action is a sham. According to the Fifth Circuit, "the determinative inquiry is not whether the suit was won or lost, but whether it was significantly motivated by a *genuine* desire for judicial relief." 822 F.2d at 528. The court explained that "a genuine desire for relief means that the desire for relief must be both honest and reasonable." *Id.* at 529. On the basis of this analysis, the court rejected the argument that a successful lawsuit can never be a sham. *Id.* at 528.

Unlike the Fifth Circuit, we have held that a suit must be baseless to lose its protection under the *Noerr–Pennington* doctrine. In *Rickards*, we emphasized that

immunity is not afforded to those who resort to "*sham* or *unfounded* litigation solely for anticompetitive purposes" and that "a single *meritless* suit" may be sufficient to defeat the *Noerr–Pennington* immunity. 783 F.2d at 1334 (emphasis added). We explained that our cases require both evidence that the lawsuit is *baseless and* evidence of anticompetitive activity before *Noerr–Pennington* immunity will be ruled out. *Id.*

> When the antitrust plaintiff challenges one suit and not a pattern, *a finding of sham requires not only that the suit is baseless*, but also that it has other characteristics of grave abuse, such as being coupled with actions or effects external to the suit that are themselves anti-competitive.

*Id.* (emphasis added) (quoting *Omni Resource Development Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir.1984)). Thus, in *Rickards*, in determining whether the sham exception was applicable, we considered the defendant's good-faith belief in the merits of its suit only after we noted that the underlying litigation was baseless.

In contrast, in *Ad Visor, Inc. v. Pacific Telephone & Telegraph Co.*, 640 F.2d 1107 (9th Cir.1981), our inquiry ended once it was determined that the litigant's lawsuits were not baseless. There, we held that a litigant who brought 64 lawsuits for nonpayment of contract was protected by the *Noerr–Pennington* doctrine for prosecuting the suits because one defendant in the original action admitted that it owed the plaintiff and another defendant conceded that it *might* owe the plaintiff some money. *Id.* at 1110. Similarly, in *Omni Resource Development Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir.1984), our analysis terminated once we determined that the underlying lawsuit was not a sham.

■ Finally, in contrast to the Fifth Circuit, we have held that the prosecution of a single successful lawsuit cannot form the basis for antitrust liability. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir.1984). Because a successful lawsuit involving no fraud upon the court is obviously based on probable cause, it cannot be a

sham as a matter of law.[7] *See Omni Resource*, 739 F.2d at 1414 (suit cannot be baseless where, although outcome unknown, the state court plaintiffs were successful at least to the point of receiving a preliminary injunction); *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1257 n. 17 (9th Cir.1982) (no authority for the proposition that the bringing of meritorious suits can constitute sham suits violative of the antitrust laws).[8]

Because the sham exception to the *Noerr-Pennington* rule may have a chilling effect on those who seek redress in the courts, we have held that the exception should be applied with caution. *Rickards*, 783 F.2d at 1334. We see no basis for holding that a suit brought with probable cause in fact and law may be a sham. Such a holding would erode the first amendment right to petition that is the basis for the *Noerr-Pennington* doctrine, *see Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-38, 81 S.Ct. 523, 529-30, 5 L.Ed.2d 464 (1961), by imposing the risk of treble damages for initiating a suit based on a well-founded, but untested, legal theory.

In the present case, the Movie Studios' copyright infringement suit presented an issue of first impression both at the district court level and in this circuit. The first amendment right of petition is particularly strong in such a case. The district court concluded that the lawsuit was brought with probable cause and presented issues that were difficult to resolve. This finding, which PRE does not challenge, precludes the application of the sham exception as a matter of law.[9]

PRE points to language in three of our cases stating that the applicability of the sham exception is a question of fact: *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983); *Aydin Corp. v. Loral Corp.*, 718 F.2d 897 (9th Cir.1983); *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386 (9th Cir. 1983). From this language, PRE argues that the determination that a lawsuit is brought with probable cause—a legal question—cannot be the test in this circuit for ascertaining whether the suit is a sham.

**7.** PRE claims that we have never held that a successful lawsuit cannot be a sham as a matter of law. PRE first asserts that *Sealy* merely recognizes that this circuit has not yet found a successful lawsuit to be a sham. We disagree. *Sealy* makes no such statement. PRE also points to a dictum in *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 841 n. 13 (9th Cir.1980), and *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1245 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983), which states that success is not the sole criterion for determining whether a suit is a sham. This dictum is not inconsistent with our holding in *Sealy* insofar as it refers to the second type of sham activity identified in *California Transport*—"misrepresentations in the adjudicatory process." If a litigant procures a favorable judgment through misrepresentations or other unethical conduct, the success of the lawsuit would not shield the litigant from the antitrust laws. For example, in *Clipper Exxpress*, the plaintiffs alleged that the defendants attempted to influence the ICC by supplying fraudulent information to the ICC. 690 F.2d at 1247. As noted earlier, there are no allegations of misrepresentation in the present case.

**8.** The Supreme Court has also indicated that successful petitioning cannot be a sham. *See Allied Tube & Conduit Corp. v. Indian Head,*

*Inc.*, 486 U.S. 492, 502, 108 S.Ct. 1931, 1938, 100 L.Ed.2d 497 (1988) (effort to influence governmental action by lobbying an organization that promulgates code for electrical materials cannot be characterized as a sham in light of the actual adoption of the code into a number of statutes and local ordinances). The Third, Fourth, Sixth, and Tenth Circuits have also so held. *See Columbia Pictures Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir.1984) (success on merits of copyright infringement claim precludes finding of sham); *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 564-65 (4th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991) (successful suit cannot be a sham); *Potters Medical Center v. City Hosp. Ass'n*, 800 F.2d 568, 579 (6th Cir.1986) (success strongly suggests that actions were not baseless); *Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.*, 497 F.2d 285, 290-92 (10th Cir.1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975) (any suggestion of sham on the part of the litigant disappears in view of our determination that the litigant has an enforceable copyright interest).

**9.** The fact that the present lawsuit was resolved on cross-motions for summary judgment does not affect our evaluation of the objective reasonableness of the suit. The questions presented in the infringement action were purely legal.

■ We do not believe that the language referred to in the three cases cited above is inconsistent with our holding. Although we have never referred to our analysis as a two-part test, it is clear from our discussion in *Rickards*, as well as in our other cases, that an antitrust plaintiff must make a two-part showing to support a finding of sham: (1) that the suit is baseless—a legal question, *see Sealy*, 743 F.2d at 1384 (affirming grant of summary judgment where underlying suit was successful); and (2) that the suit was brought as part of an anticompetitive plan external to the underlying litigation—a question of fact. In the three cases cited by PRE, only the second prong of the test was at issue. *See e.g., Clipper Exxpress*, 690 F.2d at 1253 (whether sham exception applies is a question of fact where defendants conceded that they instituted protests before the ICC automatically and without regard to merit); *Aydin*, 718 F.2d at 902 (affirming grant of summary judgment where plaintiff produced no evidence of sham aside from the filings of the actions; court was unable to determine whether the suit was baseless because the action was still pending); *Heliodyne, Inc.*, 698 F.2d at 389 (remanding for reconsideration in light of *Clipper Exxpress* where the plaintiff alleged that the defendant Heliodyne conspired with other competitors to bring a *sham* suit against the plaintiff in state court and it appeared that the district court may have dismissed on the mistaken belief that a single lawsuit could not constitute a sham).

■ We decline to adopt the Fifth Circuit's subjective approach and reaffirm our earlier holding in *Rickards*. We believe

that the Supreme Court's pronouncements on the sham exception support our conclusion. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983) (by analogy to the *Noerr–Pennington* doctrine and its sham exception, the NLRB may enjoin a suit as an unfair labor practice only if the suit was "based on insubstantial claims" or lacked "a reasonable basis").[10] Simply stated, a suit brought with probable cause does not fall within the sham exception to the *Noerr–Pennington* doctrine.[11]

3. Discovery

■ In its reply brief, PRE argues that the summary judgment must be reversed because the district court failed to rule on its request for discovery. PRE relies on *Garrett v. City & County of San Francisco*, 818 F.2d 1515 (9th Cir.1987). In *Garrett*, we held that the trial court erred in failing to consider the plaintiff's pending motion for discovery prior to granting the defendant's motion for summary judgment because the evidence sought by the plaintiff in discovery was necessary to satisfy the plaintiff's burden of persuasion on summary judgment.

Although summary judgment is rarely granted in antitrust cases before discovery is completed, *see Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834 (9th Cir.1980), we conclude that the district court did not abuse its discretion in denying PRE's request for further discovery. We disagree with PRE's assertion that the district court did not resolve the request for discovery.[12] In its decision, the court noted that PRE

---

**10.** In *Bill Johnson's*, the Court concluded:

[W]e hold that the Board may not halt the prosecution of a state-court lawsuit, *regardless of the plaintiff's motive, unless the suit lacks a reasonable basis in fact or law*. Retaliatory motive *and lack of reasonable basis* are both essential prerequisites to the issuance of a cease-and-desist order against a state suit. *Id.* at 748–49, 103 S.Ct. at 2173 (emphasis added).

**11.** We note that several other circuits are in accord with our conclusion. *See Eden Hannon & Co.*, 914 F.2d at 564–65 (intent of litigant only becomes relevant once the invalidity of the legal claims is established); *Juster Associates v. City of Rutland*, 901 F.2d 266, 271 (2d Cir.1990) ("To

be immune, participation in administrative or judicial processes must be for the purpose of asserting *colorable* claims within the jurisdiction of the particular tribunal."); *Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1273 (6th Cir.1989) (unsuccessful lawsuit not a sham where the trial court did not treat the theory as frivolous and the antitrust plaintiffs did not contend that the theory of the underlying case was so farfetched as to warrant the imposition of sanctions against the attorneys who brought it); *Potters Medical Center*, 800 F.2d at 579 (success is *not* necessarily a prerequisite to receiving protection under *Noerr–Pennington* ).

**12.** We note that this assertion is inconsistent with PRE's opening brief, where PRE stated that

requested discovery on the issue of the Movie Studios' subjective intent in bringing the copyright action. The court then concluded that even if the Movie Studios had an anticompetitive intent in bringing the action, they did not lose their *Noerr–Pennington* immunity. Thus, the court implicitly ruled that the materials sought in discovery would not defeat PRE's motion for summary judgment.

The district court's conclusion is consistent with our holding on the *Noerr–Pennington* issue; evidence of the Movie Studios' subjective intent was relevant only if it was shown that the copyright infringement action was baseless. *Garrett* is therefore inapposite; PRE's discovery of the Movie Studios' subjective intent would not raise an issue of material fact sufficient to preclude the entry of summary judgment.

4. Dismissal of the state law counterclaims

■■■ PRE advances two arguments in support of its assertion that the district court erred in dismissing its state law counterclaims. PRE first contends that the district court should not have dismissed its state law claims because they were compulsory counterclaims. PRE asserts that once ancillary jurisdiction attaches, a court is not relieved of its power to hear the ancillary state claims by subsequent dismissal of the federal claims. This argument lacks merit. The district court's *power* to hear claims is not at issue; the question is whether the district court acted within its discretion in dismissing the state law claims.

The court's decision to dismiss the claim is governed by "considerations of judicial economy, convenience and fairness to litigants." *Notrica v. Bd. of Supervisors of County of San Diego*, 925 F.2d 1211, 1213 (9th Cir.1991) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). PRE argues that, in light of these factors, the district court should not have dismissed its state law claims. PRE notes that the the court based its denial of the request for discovery on its conclusion that a lawsuit brought

counterclaims have been pending in the district court for six years and the court is familiar with the claims. In addition, PRE asserts that forcing it to initiate a new suit in state court would subject it to further delay and possibly to additional defenses such as the statute of limitations.

Although we sympathize with PRE, we cannot, on these facts, conclude that the district court abused its discretion in dismissing the state law counterclaims. First, PRE would not be prejudiced if required to file its state law claims in the state courts. California equitably tolls the statute of limitations period during the time a suit is pending in federal court. *See Addison v. State*, 21 Cal.3d 313, 319, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). PRE's remaining argument—that the filing in state court would cause further delay—is foreclosed by *Danner v. Himmelfarb*, 858 F.2d 515, 523 (9th Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989). There, we held that delay does not constitute a sufficient basis for finding that the district court abused its discretion.

The decision of the district court is

AFFIRMED.

with probable cause could not be a sham.