**WEST FARMS ASSOCIATES,**
Plaintiff–Appellant,

v.

**STATE TRAFFIC COMMISSION OF THE STATE OF CONNECTICUT; Emil H. Frankel; J. William Burns, Individually and as a Member of the State Traffic Commission of the State of Connecticut; Nicholas A. Cioffi; Bernard R. Sullivan, Individually and as a Member of the State Traffic Commission of the State of Connecticut; Louis S. Goldberg; Lawrence F. Delponte, Individually and as a Member of the State Traffic Commission of the State of Connecticut; the Department of Transportation of the State of Connecticut; Wilmorite, Inc., Defendants–Appellees.**

No. 169, Docket 91–7460.

United States Court of Appeals,
Second Circuit.

Argued Sept. 24, 1991.

Decided Dec. 3, 1991.

Neil Proto, Washington, D.C. (James F. Hibey, Frances C. DeLaurentis, Michael H. Tecklenburg, Verner, Liipfert, Bernhard, McPherson and Hand, Washington, D.C., James J. Perito, Susman, Duffy and Segaloff, New Haven, Conn., of counsel), for plaintiff-appellant.

George Finlayson, Asst. Atty. Gen., Hartford, Conn. (Richard Blumenthal, Atty. Gen., of the State of Conn., Hartford, Conn., of counsel), for defendants-appellees State Traffic Com'n; Dept. of Transp.; Emil H. Frankel, J. William Burns, Nicholas A. Cioffi, Bernard R. Sullivan, Louis S. Goldberg, and Lawrence F. Delponte.

Jeffrey J. Mirman, Farmington, Conn. (Peter B. Rustin, Tarlow, Levy & Droney, Farmington, Conn., of counsel), for defendant-appellee Wilmorite, Inc.

Before LUMBARD, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff-appellant West Farms Associates ("West Farms"), owner of West Farms Mall, a shopping center, brought the instant action in the District of Connecticut, seeking declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983 (1988), against various individuals, the State Traffic Commission of the State of Connecticut ("STC"), the Department of Transportation of the State of Connecticut ("DOT"), and Wilmorite, Inc. ("Wilmorite"). Wilmorite seeks to build a shopping center that would compete with West Farms Mall. Essentially, West Farms claims that the STC's method of reviewing Wilmorite's application to the STC for a traffic certificate violated West Farms' First and Fourteenth Amendment rights. Judge Nevas dismissed West Farms' complaint pursuant to Fed.R.Civ.P.

12(b)(6) for failure to state a claim. We affirm.

## BACKGROUND

We assume the facts as alleged in West Farms' complaint. *See Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 57–58 (2d Cir.1985). The STC is a three-member regulatory agency within the DOT. *See* Conn. Gen.Stat. § 14–298 (1987). The STC issues traffic certificates that are a prerequisite to private development plans affecting current traffic patterns on state or federal roads. Conn.Gen.Stat. § 14–311(a) (1987) ("No person ... shall build, expand, establish or operate any ... shopping center ... until such person or agency has procured from the state traffic commission a certificate that the operation thereof will not imperil the safety of the public."). Before issuing traffic certificates, the STC must consider a number of factors, including highway safety and traffic density. *See* Conn.Gen.Stat. § 14–311(d). Because the STC has only three commissioners and an executive director, DOT officials often conduct the substantive analysis of applications before the STC.

West Farms Mall is located on the boundary between West Hartford and Farmington, Connecticut. West Farms holds two STC traffic certificates, the first of which was issued in 1972, and the second in 1982. These certificates authorized West Farms to build, and subsequently expand, West Farms Mall, and to make related roadway changes.

Wilmorite, a New York corporation, wishes to build a shopping center, to be known as Plainville Mall, approximately six miles from West Farms Mall. Plainville Mall will compete with West Farms Mall. Wilmorite has applied to the STC for a traffic certificate that would permit Wilmorite to make changes in existing roads and highways adjacent to the proposed site of Plainville Mall.

In December 1989, West Farms petitioned to intervene in the STC's review of Wilmorite's application, pursuant to Conn. Gen.Stat. § 22a–19 (1987). In its petition, West Farms raised a number of environmental concerns for STC consideration. Intervention was granted on January 11, 1990, for the limited purpose "of raising environmental issues relevant to the issuance of a Certificate under § 14–311 of the General Statutes."

On April 18, 1990, West Farms filed the instant complaint, later amended on July 31, 1990. West Farms alleges that its status as an intervenor before the STC was illusory. West Farms claims that, since the docketing of Wilmorite's application, STC and DOT officials have had numerous *ex parte* meetings with Wilmorite at which the proposed roadway changes were considered and discussed. West Farms further alleges that multiple decisions concerning a variety of factors, including location, safety, and cost, have been made at these meetings and that West Farms has not had a formal opportunity to participate in this decision-making process. According to West Farms, it has never received notice from the STC or the DOT of these meetings, nor has it received transcripts or meeting notes from such meetings. West Farms also complains that the STC has no standards or procedures governing the consideration of applications for traffic certificates or for considering the comments of intervenors.

Based on these allegations, West Farms theorizes that it has been deprived of property rights without due process. It also claims that the STC "discriminated against the expression of West Farms' viewpoint in a public forum in violation of its right to petition under the First Amendment and of the [E]qual [P]rotection [C]lause of the [Fourteenth] Amendment." Finally, West Farms complains that the STC "failed to provide West Farms with a judicially reviewable record," thus violating West Farms' Fourteenth Amendment due process rights, and deprived West Farms of equal protection and its First Amendment right to petition.

The defendants-appellees moved to dismiss West Farms' complaint. This motion was referred to Magistrate F. Owen Eagan, who recommended that the motion be granted. Judge Nevas thereafter entered

judgment dismissing West Farms' complaint. This appeal followed.

## DISCUSSION

■ Turning first to West Farms' property right/due process argument, we note that a plaintiff may not successfully claim a deprivation of property without due process absent the identification of a protected property interest. *See Fusco v. Connecticut*, 815 F.2d 201, 205 (2d Cir. 1987), *cert. denied*, 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987). "[T]he nature of the interest [must be] one within the 'liberty or property' language of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Federal Constitution does not create property interests. Instead, such interests are derived from other sources, such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ West Farms designates two state law sources for its claim to a protected property interest. First, West Farms asserts that the Connecticut Environmental Protection Act ("CEPA") confers a property right upon West Farms. As a formal intervenor before the STC, pursuant to the CEPA, Conn.Gen.Stat. § 22a–19(a), West Farms argues that it has the right to invoke what it styles the mandatory language of Section 22a–19(b) of the CEPA. This right, West Farms argues, is a protected property interest.

We disagree. Section 22a–19 of the CEPA provides first that interested parties may intervene in the administrative or licensing proceedings of state agencies for the limited purpose of alerting them to alleged unreasonable environmental effects of the pertinent conduct. Conn.Gen.Stat. § 22a–19(a). Second, it mandates that in such proceedings, the agency "shall consider the alleged unreasonable pollution, impairment or destruction ... and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as ... there is a feasible and prudent alternative...." Conn.Gen.Stat. § 22a–19(b).

■ Thus, Section 22a–19 accords to an intervenor such as West Farms an opportunity to present to the STC the intervenor's views as to the effect on the environment of the development in question. The STC has no obligation to accept as true the intervenor's allegations but is free to take whatever action it believes prudent. Such a right is purely procedural, providing at best an opportunity to be heard. As we have made clear, the Due Process Clause does not protect against the deprivation of state procedural rights. *See Fusco*, 815 F.2d at 205–06; *BAM Historic Dist. Ass'n v. Koch*, 723 F.2d 233, 236 (2d Cir.1983).

West Farms relies heavily upon *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). However, unlike Section 22a–19(b), the statute at issue in *Hewitt* imposed mandatory duties on Pennsylvania prison officials for the benefit of individual inmates. The officials were thus required to follow certain guidelines before removing an inmate from the general prison population and placing that inmate in close or maximum administrative custody. *Id.* at 470 n. 6, 103 S.Ct. at 871 n. 6. The Court held that the prison inmates had a liberty interest protected by the Due Process Clause as a result of this Pennsylvania statutory scheme. *Id.* at 471–72, 103 S.Ct. at 871–72.

Section 22a–19(b), as noted, neither specifies any particular action or non-action nor confers any individualized benefit. Although it accords intervenors the procedural right to be heard on the environmental effects of a development, the STC's decision is largely of a judgmental and discretionary nature. Moreover, the intended beneficiaries of Section 22a–19(b) are entirely generalized, including anyone who might encounter unreasonable environmental consequences as a result of the particular development. Such universal benefits are not property interests protected by the Due Process Clause. *See, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ("The hallmark of property, the Court has

emphasized, is an *individual* entitlement grounded in state law.") (emphasis added).

■ Alternatively, West Farms argues that its STC traffic certificates are property protected by the Due Process Clause. Although it is true that a license essential to the pursuit of one's livelihood, once issued by the state, cannot be revoked without due process, *see, e.g., Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971), the STC proceedings here concern whether to issue a traffic certificate to Wilmorite. No matter what the outcome of those proceedings, West Farms will retain its two STC certificates. West Farms' property is thus not threatened with deprivation.

■ Nor is the value of West Farms' certificates diminished by the STC proceedings. *See Mennonite Board of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983); *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 485, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988). West Farms was required by Connecticut law to obtain its STC certificates before building and later expanding West Farms Mall. Conn.Gen. Stat. § 14–311(a). The certificates state that the operation of West Farms Mall "will not imperil the safety of the public." The certificates do not guarantee West Farms any benefit other than allowing it to operate a mall. And, whether or not Wilmorite receives its own traffic certificate, the West Farms Mall will continue to operate without legal impediment.

■ It may be that the West Farms Mall will lose business if Wilmorite is permitted to build Plainville Mall. However, Connecticut has not established protection from competition as a property right. *Cf. Juster Associates v. City of Rutland, Vermont,* 901 F.2d 266 (2d Cir.1990).

■ West Farms further contends that it has a First Amendment right of access to the *ex parte* meetings between the STC officials and Wilmorite. This claim also lacks merit. The STC has no federal obligation to open all of its meetings to the public. On the contrary, it is plainly permitted by the First Amendment to conduct business in private. *Madison Joint Sch. Dist. v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 175 n. 8, 97 S.Ct. 421, 426 n. 8, 50 L.Ed.2d 376 (1976). "Nothing in the First Amendment or in [the Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minnesota State Bd. for Community Colleges v. Knight,* 465 U.S. 271, 285, 104 S.Ct. 1058, 1066, 79 L.Ed.2d 299 (1984).

Attempting to avoid the clear dictates of this case law, West Farms focuses its argument on the public forum strand of First Amendment jurisprudence. It thus argues that the STC has created a "limited public forum" and that it cannot exclude West Farms from expressing its viewpoint about the proposed Plainville Mall. However, public forum analysis applies only where a private party seeks access to public property, such as a park, a street corner, or school auditorium, in order to communicate ideas to others. *See, e.g., Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45–46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983); *Minnesota State Bd. for Community Colleges,* 465 U.S. at 280, 104 S.Ct. at 1064. West Farms has not been prevented from exchanging ideas with others on public property that is by tradition or designation open to the public for speech and assembly.

■ West Farms further argues that, even if the STC–Wilmorite *ex parte* meetings are a nonpublic forum, the STC still may not exclude West Farms' viewpoint from those meetings. Such exclusion, West Farms contends, amounts to viewpoint discrimination. However, "[t]he nonpublic-forum cases concern government's authority to provide assistance to certain persons in communicating with other persons who would not, as listeners, be acting for the government.... [T]he claim that government is constitutionally obliged to listen to appellees involves entirely different considerations from those on which resolution of nonpublic-forum cases turn."

*Minnesota State Bd. for Community Colleges,* 465 U.S. at 282, 104 S.Ct. at 1064–65. West Farms is thus not aided by nonpublic-forum case law.

 Finally, West Farms claims that the defendants-appellees have failed to keep a public record of their *ex parte* meetings and have thus denied West Farms its "right of access to meaningful judicial review." The First Amendment right to petition does include a right of access to the courts. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972). However, there is no legal foundation for West Farms' claim that this right of access obligates a state agency like the STC to keep a detailed public record of all of its proceedings for later use by a reviewing court. The two cases West Farms contends support such a proposition—*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); and *Home Box Office, Inc. v. F.C.C.,* 567 F.2d 9 (D.C.Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977)—are cases that interpret the Federal Administrative Procedure Act. Obviously, the First Amendment does not compel a state agency to follow the procedural requirements of the Administrative Procedure Act. *Cf. BAM Historic Dist. Ass'n,* 723 F.2d at 237 ("The Fourteenth Amendment does not impose upon states and localities ... an Administrative Procedure Act to regulate every governmental action...."). We thus reject this claim as well.

## CONCLUSION

Because we reject West Farms' arguments that it was deprived of property interests without due process, its First Amendment rights, and its right to judicial review, we need not address its contentions regarding sovereign immunity or Wilmorite's status as a state actor.

Affirmed.